This is an appeal from an order holding that certain debts were not covered by a mortgage on real estate, and denying an accounting. We affirm in part, reverse in part, and remand.
The action was initiated by Willie Jarvis who sought a temporary restraining order against Underwood, executor of the estate of Sybil Jarvis Underwood, on the ground that Underwood was seeking to foreclose a mortgage upon her homestead executed on November 30, 1962, to which she was not a party. That temporary order was granted. The defendant made a general denial of the plaintiff's allegations and also filed a counterclaim, joining Malcolm Jarvis, husband of the plaintiff, Willie Jarvis, as a counterclaim defendant.
The gist of the counterclaim was that over a period of years Malcolm and Willie Jarvis had borrowed various sums of money from Sybil Jarvis and either failed or refused to repay them. Certain items described as "a partial list" were alleged:
 (a) The sum of $6,425.00, secured by a mortgage on real estate, on November 30, 1962;
(b) The sum of $2,700.00 on February 8, 1956;
(c) The sum of $4,500.00 in March, 1958;
(d) The sum of $1,000.00 in February, 1958;
 (e) The sum of $16,000, secured by a mortgage on real estate, on January 26, 1959 from Guaranty Savings Life Insurance Company;
 (f) The sum of $13,150.78, secured by a mortgage on real estate on the same property, on September 15, 1961, from First Federal Savings of West Point;
 (g) The sum of $19,292.00, secured by a mortgage on the same property, on April 2, 1963. The sum of $12,905.55 of the proceeds was used allegedly to satisfy the First Federal debt, and the balance went either to the loan costs or to Malcolm Jarvis. Underwood also alleged that Sybil made payments on the note to Valley National Bank in the amount of $14,980.00; that following her death Malcolm paid nothing on it, and that Underwood satisfied the balance of $5,177.27 on January 30, 1976. Underwood alleged that Malcolm agreed (with Sybil) to make the payments on all of these mortgage debts but failed to do so;
 (h) That in 1959 Sybil secured a debt of Malcolm's in the amount of $7,000.00 owed to Valley National Bank by pledging her individual savings account as security; that Sybil was required later to pay this debt which Malcolm did not repay;
 (i) That in February, 1970 Sybil borrowed $4,800.00 from Citizens National Bank of Shawmut which then was lent by Sybil to Malcolm, and that Malcolm repaid only $205.00 of this loan following Sybil's death;
 (j) That in October, 1962 Sybil borrowed $1,389.40 from Liberty National Life Insurance Company on an insurance policy. This sum was deposited to the account of Jarvis Motors on Malcolm's agreement to repay it, but that he failed to do so;
 (k) Payment of certain amounts of Sybil for Malcolm "from time to time" in the aggregate amount of $873.44;
 (l) That certain bank accounts held by Sybil in trust, containing a total of $26,354.00, were paid over by her to Malcolm who failed to perform his promise to repay them; and
 (m) That at various other times Sybil lent Malcolm various sums which he failed to repay, and that Malcolm should be required to account for these and repay them.
Underwood, the counterclaim plaintiff, then alleged that
 [a]ll funds loaned by the said Sybil J. Underwood to the Counterclaim Defendant subsequent to the 30th day of November, 1962, are secured by that certain mortgage which Counterclaim Defendant and wife, Willie Jarvis, executed to the said Sybil J. Underwood due to the future advance clause which is contained in such mortgage. *Page 733 
After a hearing conducted ore tenus at which testimony and exhibits were introduced, the trial court found that there was owed to Sybil's estate by Willie and Malcolm Jarvis on the mortgage sought to be foreclosed the sum of $6,425.00, which the court referred to as "specifically secured in said mortgage." However, the trial court also found that it was not the intention of the parties "for the note (mortgage) to stand as security for any antecedent debts or other existing debts the mortgagors owed to Sybil J. Underwood, Deceased."
From this order the counterclaim plaintiff, Underwood, has appealed, contending that the uncontroverted evidence supports an opposite conclusion.
The document in question was what may be referred to as an "Alabama Real Estate Mortgage" form, containing printed matter as well as spaces throughout designed for the purpose of inserting relevant information. In addition to its reference to an indebtedness of $6,425.00 evidenced by a note payable on demand, the consideration clause contained a "dragnet" clause which recited:
 NOW, THEREFORE, in order to secure the prompt payment of the indebtedness evidenced by the above described note, the performance of all of the covenants and agreements made in the said note, and also to secure any other indebtedness owing by the Mortgagor to the Mortgagee, regardless of amount, and including future advances before full payment of the indebtedness secured by this mortgage, . . .
(emphasis added)
This mortgage encumbered two lots of real estate near Fairfax, was dated and acknowledged on January 30, 1962, and was executed by Malcolm and Willie Jarvis.
Such a clause may secure indebtedness other than that which is specified in the mortgage instrument. As stated in FirstNational Bank of Guntersville v. Bain, 237 Ala. 580, 188 So. 64
(1939):
 [i]t is now the settled law of Alabama, . . . that clear and express provisions extending the security to other existing indebtedness or to future indebtedness between the same parties are given full effect. . . .
Accord, City National Bank of Dothan v. First National Bank ofDothan, 285 Ala. 340, 232 So.2d 342 (1970).
An analysis of the Bain decision will be helpful here, not only because of its authority as precedent but also because the trial court and both parties in this case have relied upon it.
The mortgage in the Bain case was executed on March 5, 1925 and contained a consideration clause which referred first to an indebtedness of $7,500.00, and recited:
 [a]nd to secure the payment of the same, and any other indebtedness owing by the said W.N. Bain to the grantee before the full payment of this mortgage.['] . .
At the time this mortgage was executed the mortgagor, Bain, owed the mortgagee-bank an aggregate debt of $18,895.25 evidenced by promissory notes executed by him. One of these debts was originally incurred by Bain alone on March 5, 1925 and was secured by a recorded mortgage. Another debt was evidenced by Bain's promissory note for $6,179.95, dated March 1, 1928. Bain had given this note to the bank apparently as a satisfaction of some promissory notes of one Grizzell which Bain had endorsed. Still another Bain debt arose from Bain's earlier endorsement of some promissory notes given to the bank by his wife, Bessie. These were "taken up" by Bain on March 1, 1928 when he gave the bank his own promissory note for $5,215.30.
The trial court issued a reference to the register in equity to ascertain the amount of indebtedness secured by the mortgage in issue. The register found that the Grizzell and Bessie Bain indebtednesses were not secured because it was "the mutual understanding of the contracting parties, in said mortgage to secure only the indebtedness of W.N. Bain. . . ." That is, the latter two debts were not secured by the mortgage. The trial court confirmed the register's report. *Page 734 
On appeal, this Court reversed the decree adopting that report. After pronouncing the rule to which we have alluded earlier, giving effect to the clear and express provisions of the mortgage instrument, it characterized that language as a contractual stipulation:
 Its limitations are that such debts shall be `owing by said W.N. Bain,' and he must owe them before `full payment of this mortgage.' In other words, when he comes to satisfy and obtain a surrender of this security, he must pay any other indebtedness he then owes the bank. It is a prospective security in this regard.
Calling attention to the language of the "defeasance clause" of the Bain mortgage, which varied from the language of the "consideration clause," this Court commented that the "more usual and appropriate place" for references to other indebtednesses was the "consideration clause," in order to avoid a misleading interpretation. The defeasance clause contained in the Bain mortgage stated:
 "Upon condition, however that upon the payment of the indebtedness hereby secured, this conveyance to be void, payment of taxes and insurance, the satisfaction of prior incumbrances and other loans and advances to the mortgagor by the mortgagee before the full settlement and payment of this mortgage and all expenses of recording are to be a part of this mortgage indebtedness."
This particular defeasance clause which, the Court stated, was "intended to define the terms and conditions upon which the mortgage shall be satisfied, cease to be security for debt, and become void" did not clearly identify those debts to be paid before the mortgage ceased to be a security. "The two clauses are to be construed together as part of one instrument, one contract." Ibid, 237 Ala. at 583, 188 So. at 66.
Having laid down these guiding principles, and stressing the importance of a clear and explicit intention to cover several debts when the mortgage expressly secures only one, the Court applied them to the facts. It was shown that the two debts in question were not due at the time the mortgage by Bain and wife to the bank was executed. Bain's liability at that time, moreover, was only contingent because he was only an endorser on the notes of Grizzell and Bessie Bain. When subsequently these were "taken up" by Bain, who gave his personal notes to the bank, the Court found, these became his loans. Cf. CrescentCredit Corp. v. Union Bank Trust Co., 51 Ala. App. 683,288 So.2d 744 (1974). In reaching the conclusion that these two debts fell within the express terms of the mortgage which secured "any and all debts owing by W.N. Bain before full payment of the mortgage," the Court made special note of the relevancy of the amount of the recording tax which had been paid on the mortgage in question, that is, as being "evidence that only the indebtedness expressly named is secured." As applied to the Bain mortgage, since that tax was paid only upon the $7,500.00 (the amount of the debt referred to in the consideration clause), the Court held that this was evidence only that the notes of Grizzell and Bessie Bain were not atthat time treated as debts owing by W.N. Bain. Indeed, they could not have been so treated because they did not become hisdebts until several years later when he "took them up" by giving his own notes and thereby making himself primary obligor upon them. But considering the payment of the recording tax as such evidence, the Court continued, "does not warrant the striking out the express terms of the mortgage securing any andall debts owing by W.N. Bain before full payment of themortgage" (emphasis added).
Describing the stipulation, that a mortgage shall secure future debts of the mortgagor, as contractual, this Court held further that those contractual terms could not be varied or contradicted by parol evidence. Id., 237 Ala. at 584,188 So. 64; Regional Agricultural Credit Corp. v. Hendley, 251 Ala. 261, 37 So.2d 97 (1948).
Turning now to the facts of this case we find that in addition to the "consideration clause" previously quoted, this mortgage contains a "defeasance clause" which recites: *Page 735 
 Upon condition, however, that if said note shall be paid in full according to its tenor, together with all costs, this conveyance shall become null and void, . . .
(emphasis added)
Keeping in view the necessity of construing the "consideration clause" and the "defeasance clause" together in order to discern the clear and explicit intent to cover other debts in the one mortgage, we are aided by the decision inMalkove v. First National Bank of Mobile, 295 Ala. 191,326 So.2d 108 (1976). In that case the consideration clause was
 [i]n order to secure the repayment of all amounts heretofore, herewith or hereafter owed by mortgagor to mortgagee, at anytime before actual cancellation of this instrument . . .
while the defeasance clause provided that
 [i]f the mortgagor shall well and truly pay to the mortgagee the said sum of $3,500.00 with interest. . . .
These clauses bear substantial similarities to those contained in the 1962 mortgage given to Sybil by the Jarvises. The only distinction in the defeasance clauses is that the Jarvis mortgage used the terms "said note," while the mortgage in theMalkove case stated "the said sum of $3,500.00," which sum was the amount of the note. This distinction is without any real difference. The point to be made in comparing the terms of the two clauses, however, is that, construing them together, they do not show a clear and explicit intent that the other debts are to be included in the security provided by the mortgage. That was the conclusion reached by this Court in Malkove when this same issue was before it. The defeasance clause here makes it questionable whether Sybil and the Jarvises entertained such an intention, especially when, following Bain, we consider that the purpose of the defeasance clause was to identify the terms and conditions on which the mortgage was to cease being a security. If an intent had existed to effect such a result only upon the payment of all other loans and advances, as the Bain mortgage did, it would have been an easy matter of draftsmanship to accomplish that aim. Then there would have been no need for additional mortgages.
Accordingly, we cannot agree with the appellant's contention that "there was no evidence of the parties' intentions other than the clear and explicit documentary evidence," which we take to mean the "consideration clause" contained in the 1962 mortgage. Such a position overlooks the effect of the "defeasance clause" upon those terms.
Nor was it improper for the trial court to consider the amount paid in recording tax as evidence of the parties' intentions. The mortgage instrument which disclosed that payment was introduced as a plaintiff's exhibit without objection and was entitled to be considered by the trial courtore tenus according to its effect upon the issues, including the intention of the parties relative to the obligations to be covered. He had the responsibility of deciding which evidence was correct and which inferences were to be drawn from that evidence. Air Movers of America, Inc. v. State National Bank ofAlabama, 293 Ala. 312, 302 So.2d 517 (1974). Under this evidence we cannot hold that the trial court was palpably wrong, and thus his conclusions on that point will not be disturbed. Goodall v. Ponderosa Estates, Inc., 337 So.2d 726
(Ala. 1976).
We reach a different conclusion, however, on the counterclaim plaintiff's petition for an accounting.
The appellant maintains that he had petitioned the trial court originally for an accounting to determine the amounts of money due to the estate of Sybil J. Underwood from Malcolm Jarvis. The record bears out that contention, for after alleging the indebtednesses we have referred to earlier, the appellant's complaint added:
 10. Counterclaim Plaintiff represents and avers upon information and belief that said Malcolm Jarvis has paid none of the amounts which were borrowed by the Counterclaim Defendant from said Sybil J. Underwood, and that there are substantial *Page 736 
sums due to the said Counterclaim Plaintiff.
 11. Upon information and belief, Counterclaim Plaintiff represents and avers that, upon the request of the Counterclaim Defendant, the said Sybil J. Underwood loaned divers amounts of money at divers dates to Counterclaim Defendant, which amounts and dates are unknown to Counterclaim Plaintiff, and have not been repaid. Counterclaim Plaintiff represents and avers that Counterclaim Defendant should be required by this Court to account to the Counterclaim Plaintiff for such sums of money and to repay the same.
Based upon these allegations, appellant contends now that the trial court erred when it did not render a decree granting an accounting which would have included the sums of money due to Sybil from Malcolm under their agreement of January 26, 1959, which follows:
 WHEREAS, Sybil J. Underwood has made loans to Malcolm Jarvis as follows: (1) $2700.00 on February 8, 1956; (2) $4500.00 in March, 1958; and, (3) $1,000.00 in February, 1958; and
 WHEREAS, Sybil J. Underwood has also pledged the sum of $7,000.00 of a savings account at the Valley National Bank, Lanett, Alabama, as a security for a loan of the said Malcolm Jarvis; and
 WHEREAS, Sybil J. Underwood has this day borrowed the sum of SIXTEEN THOUSAND AND NO/100THS DOLLARS ($16,000.00) from Guaranty Savings Life Insurance Company, the same being secured by a mortgage on certain real property owned by said Sybil J. Underwood, and the proceeds of said loan, to-wit, the sum of SIXTEEN THOUSAND AND NO/100THS DOLLARS ($16,000.00), having been turned over and loaned by the said Sybil J. Underwood to the said Malcolm Jarvis; and
 WHEREAS, said SIXTEEN THOUSAND AND NO/100THS DOLLARS ($16,000.00) loan from Guaranty Savings Life Insurance Company is payable in 120 monthly installments of $177.76 each, and, the said Malcolm Jarvis has agreed to pay and discharge the said payments as the same become due and payable.
Under the terms of that agreement, appellant contends, Malcolm Jarvis acknowledged his indebtedness to Sybil for certain sums, and that in the hearing below Malcolm neither diminished nor disputed this acknowledged indebtedness. Under these pleadings and this evidence, appellant insists, it was error not to grant an accounting for those unpaid sums.
In response to this contention, the appellees insist that the trial court was correct because the appellant had an adequate remedy at law, citing Burns v. Willis, 265 Ala. 497,92 So.2d 38 (1957).
It is true that the Burns' decision denied equitable relief by way of an accounting when it was not shown by the bill of complaint and its supporting proof that no adequate remedy existed at law. The absence of such an adequate remedy would have been established, under the Burns' case, by proof of mutual accounts, or complicated accounts difficult to adjust, or the existence of a fiduciary relationship between the parties. That decision was rendered, however, before the Alabama Rules of Civil Procedure began to govern civil trial practice (July 3, 1973), and hence can have no controlling influence in the present counterclaim which was filed on May 11, 1976. Under those rules we now have an integrated procedural system, Rule 1, under which there is only one form of action, Rule 2, which allows a party to allege in the same complaint as many separate claims, "legal" or "equitable" as he has regardless of consistency. Rule 8 (e)(2). The same liberality is permitted in counterclaim pleading, Rule 13 (b) (permissive counterclaims), (h) (joinder of additional parties). As the comments to Rule 13 observe:
 In general, the scheme of the rule is that any claim whatever which any party has against any opposing party may be asserted as a counterclaim. . . . It is immaterial whether the counterclaim is legal or equitable . . . or even whether it has any connection whatever with the plaintiff's claim . . . *Page 737 
Accordingly, under the present procedure it is no longer a valid objection that a particular claim alleged is improperly before the court because it can be remedied on the "law side." The trial court nowadays "wears only one hat."
Under the evidence adduced from Malcolm Jarvis, it is clear that the trial court committed a palpable error in denying the claim for an accounting for sums allegedly due under the 1969 agreement. Jarvis admitted executing it, and stated that he could not prove that he had paid the debts to which that agreement refers. His other testimony does not disclose any such payments. The record does reveal a number of financial transactions between Malcolm and Sybil involving businesses operated by them jointly, and a number of cancelled checks drawn by Sybil which, appellant contends, were executed on Malcolm's behalf. Taken together, all of this evidence supported the appellant's claim for an accounting, and therefore the trial court erred when it did not grant that relief. Thus the judgment must be reversed for further proceedings not inconsistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
MADDOX, JONES, SHORES and EMBRY, JJ., concur.