In re Mason W. BONNER and Iva J. Bonner, Debtors.

Bankruptcy No. BK84–1434.

United States Bankruptcy Court, N.D. Alabama.

Oct. 1, 1984.

Dennis W. Shields, Tuscaloosa, Ala., for debtors.

Albert G. Lewis, III, Tuscaloosa, Ala., for Norwest Financial Alabama, Inc.

## OPINION DENYING SECURED STATUS

GEORGE S. WRIGHT, Bankruptcy Judge.

This matter came before the Court to determine whether the claim of Norwest Financial Alabama, Inc. in the amount of $1,441.30 is a secured claim under Sec. 506(a).

The debtors, Mason W. Bonner and Iva J. Bonner filed a petition under Chapter 13 of the Code and a confirmation hearing was held on April 27, 1984. One claim in the amount of $5,778.25 was classified as a secured claim secured by a real estate mortgage on the homeplace of the debtors. The current mortgage payments of $155.00 per month were to be paid in the Chapter 13 plan.

A second claim for $1,441.30, claimed to be also a secured claim and secured by the same real estate mortgage under a future advance clause (dragnet clause). The debtor contested the validity of the dragnet clause and the creditor claimed that the dragnet clause dragged in the subsequent advance. Briefs and arguments have been submitted by both parties.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. On November 1, 1982 the debtors executed a mortgage for $7,440.00 to Dial Finance Company of Alabama (the predecessor to present creditor, Norwest Financial Alabama, Inc.), which mortgage was recorded on November 3, 1982.

2. On March 25, 1983, the creditor, Norwest Financial Alabama, Inc. advanced $1,500.83 and showed that the security was a real estate mortgage, including $395.17 finance charge and 23.53% APR for a total payments of $1,896.00.

3. The validity of the future advances clause (dragnet) depends upon the construction of the clauses contained in the original real estate mortgage dated November 1, 1982 as compared to the Alabama cases construing the effectiveness of a dragnet clause as shown on the chart below:

| | First Nat. Bank of Guntersville v. Bain, 237 Ala. 580, 188 So. 64 (SC, 1939) | City Nat. Bank of Dothan v. First Nat. Bank, 285 Ala. 340, 232 So.2d (SC, 1970) | In Re Mason W. & Iva J. Bonner, BK#84–1434, N.D. Ala. | Underwood v. Jarvis, 358 So.2d 731 (SC, 1978) | Malkove v. First Nat. Bank of Mobile, 295 Ala. 191, 326 So.2d 108 (SC, 1976) |
|---|---|---|---|---|---|
| NOTE | $7,500 | $12,000 | $7,440 | $6,435 | $3,500 |
| MORTGAGE: Consideration (And to Secure Clause) | Payment of same (Note) and any other indebtedness owing ... before full payment | Payment thereof, together with additional amounts furnished me, or either of us | "...in consideration of said loan and to further secure the payment of said Note and any future Note or Notes executed and delivered to Mortgagee by Mortgagors at any time before the entire indebtedness shall be paid in full, evidencing either a future loan by Mortgagee or a refinancing of any unpaid balance of the Note above described, or renewal thereof, or both such future loans and refinancing..." | Above described note and any other indebtedness owing and future advances before full payment | All amounts heretofore, herewith or hereafter owed ... before actual cancellation |
| Defeasance Clause—Void | Upon payment of indebtedness hereby secured, prior incumbrances and other loans and advances ... before full ... payment of this mortgage | If procure more money or become indebted ... in excess of amount herein stated before the payment thereof | UPON CONDITION, HOWEVER, that if Mortgagors shall well and truly pay ... the said Note or Notes and each and all of them, and each and every installment thereof when due ... (Underlining for emphasis) | If said note shall be paid in full | If ... pay the ... $3,500 |
| Holding: | GOOD | GOOD | | BAD | BAD |

## APPLICATION OF LAW TO FACTS

The "dragnet clause" must evidence the clear and explicit intent for the real estate to secure future advances. *Underwood v. Jarvis,* 358 So.2d 731, 735 (Ala. 1978). Here, the *defeasance* clause is substantially similar to the *Underwood* case, but does have the additional words "or

Notes and each and all of them". However, this refers back to the *consideration* clause which provides for two different types of future notes:

(1) Future advances, or

(2) Refinancing.

The *Underwood* case teaches that the defeasance clause and the consideration clause must be construed together; however, the defeasance clause must identify the terms and conditions on which the mortgage would cease being security. *Id.* The defeasance clause could refer either to a renewal or a future advance, and the

ambiguous language used in the writing must be construed against the drafting party (here, the creditor). *See Jehle-Slauson Const. Co. v. Hood-Rich, Architects and Consulting Engineers*, 435 So.2d 716, 720 (Ala.1983).

This conclusion is buttressed by the fact that recording tax was paid only on the original amount of the November 1, 1982 mortgage on $7,440.00. It is proper "to consider the amount paid in recording tax as evidence of the parties' intention".[1] *Underwood*, 358 So.2d at 735.

1. Sec. 40–22–2 provides:

No mortgage, deed of trust, contract of conditional sale or other instrument of like character which is given to secure the payment of any debt which conveys any real or personal property situated within this state or any interest therein or any security agreement or financing statement provided for by the Uniform Commercial Code, except a security agreement of a financing statement relating solely to security interests in accounts, contract rights or general intangibles, as such terms are defined in the Uniform Commercial Code, shall be received for record or for filing in the office of any probate judge of this state unless the following privilege or license taxes shall have been paid upon such instrument before the same shall be received for record or filing:

.    .    .    .    .

(2) a. Except as provided in paragraph b. of subdivision (1) of this section, if any part of the indebtedness which the mortgagor or debtor in any instrument conveying any real property situated within this state, or any interest therein, other than fixtures under the Uniform Commercial Code, is authorized to incur under the terms of the instrument has not been or will not be presently incurred at the time such instrument is offered for record, the tax shall be paid on the amount of indebtedness presently incurred, and the department of revenue, upon the petition of the owner of any such instrument or upon the petition of the agent or attorney of such owner, shall ascertain to its own satisfaction the amount then taxable and the amount to be incurred thereafter and determine the amount upon which the tax shall be paid at the time such instrument is offered and shall endorse its findings on such instrument. Upon the presentation of such instrument with such endorsement thereon, the probate judge of any county in which the instrument is offered, upon the payment of the tax upon the amount so ascertained by the department of revenue and the recording fees of the probate

judge, shall accept the same for record. The department of revenue shall also require the owner of such instrument to execute a bond in an amount sufficient to secure to the state the privilege tax to become due and payable under this section upon the amount of the indebtedness to be incurred thereafter, such bond to be approved by the department of revenue and to the probate judge of the county where said instrument is first filed for record, whenever such owner or his successor in interest incurs any additional indebtedness thereunder, and the amount so incurred; and that the said owner of such instrument will pay or cause to be paid to the probate judge of the county in which said instrument is first filed the privilege or license tax required under this section upon the accrual of any additional indebtedness, and the said owner of such instrument will report to the said probate judge and the department of revenue during the month of September of each year the amount of all indebtedness and all bonds, debentures, notes or other forms of indebtedness incurred or certified and delivered under said instrument to such date, and the amount so certified and delivered during the preceding 12 months, and the aggregate of all such evidence of indebtedness certified and delivered under such instrument prior to such year. The bond executed to secure payment of the tax herein required shall cover a term of five years; and, after the expiration of said term of five years, the owner of the instrument offered for record shall execute such further bond as may be required by the department of revenue covering the succeeding term of five years, and thereafter every term of five years, in the same manner so long as any of the indebtedness authorized to be incurred by such instrument has not been incurred with like condition and in such sum as the said department may prescribe. *Ala.Code* Sec. 40–2–2 (1975).

Thus, the recording data on the recorded mortgage shows that tax in the amount of

Therefore, the claim of Norwest Financial Alabama, Inc. for $1,441.30 is classified as **UNSECURED.**[2]

This shall constitute the findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure. A separate order will be entered in conformance of this opinion.

$11.25 was paid, being $.15 per $100 or fraction thereof ($.15 × 75 = $11.25). There was no showing that the bond covering future advances was ever executed. The Court recognizes that practically speaking, a strict application of the recording tax as an evidence rule would eliminate the advantages of having a future advance clause. Regarding those advantages, Justice Bouldin stated in the *Bain* case:

"…. that in many cases it would be a great hardship if this rule did not obtain as regards future indebtedness incurred or assumed by the mortgagor. For example, a bank customer, having occasion in his business operations, to obtain frequent loans, may thus avoid the necessity of giving repeated mortgages."

*First Nat'l Bank v. Bain*, 237 Ala. 580 at 582, 188 So. 64 at 66 (1939). Because the instant case involves such an ambiguously drafted future advance clause, however, the Court must give weight to the recording tax in determining the intent of the parties.

2. The effect of this classification is that as an unsecured claim it will not incur additional interest under Sec. 502(b)(2), and, will only be paid 70% as provided in the original confirmation order dated April 27, 1984.