**In the Matter of Dickie Joe LADNER d/b/a Ladner Farms.**

**Bankruptcy No. 8408188SC.**

United States Bankruptcy Court, S.D. Mississippi, S.D.

May 10, 1985.

Craig M. Geno, Jackson, Miss., for Ladner.

Dennis M. Ford, Jackson, Miss., Trustee.

Pat H. Scanlon, Jackson, Miss., for First Mississippi Nat. Bank.

Harold J. Barkley, Jr., Jackson, Miss., for Agrow Credit Corp.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BARNEY E. EATON, III, Bankruptcy Judge.

On April 16, 17 and 18, 1985, the Court heard the following issues and matters: I. Attorneys fees for Agrow Credit Corporation ("Agrow") and First Mississippi National Bank ("FMNB"); II. The enforceability of the dragnet clauses of FMNB; III. Confirmation of debtors, creditors and unsecured creditors committee plans of reorganizations; and IV. Debtor's motion for authority to sell property in both the Ladner Farms Chapter 11 proceeding and in the Robinwood Forest, Inc. Chapter 11 proceeding.

### BACKGROUND COMMENTS

On October 5, 1984, Dickie Joe Ladner d/b/a Ladner Farms filed for relief under Chapter 11 of the U.S. Bankruptcy Code. The Debtor is a sizable farming operation of approximately 14,000 acres situated in Pearl River, Hancock, Harrison, Stone and Jefferson Davis Counties in southern Mississippi. The Debtor has 14 full-time employees, which fluctuates with the seasons, and a full-time staff veterinarian. He has a creative approach to farming as he tries to make his land productive the year round. He buys young light-weight cattle in the fall and winter grazes them on 6,000 acres of rye grass until spring when he sells the heavy cattle. He then plants a soybean crop which he harvests in the fall. Then he purchases new cattle, commencing the cycle again. Additionally, the Debtor raises winter wheat. Since the filing of the Debtor's petition he has been involved in extensive litigation—most of which was brought about by Agrow and FMNB, secured creditors.

Hearings commenced on October 19, 1984, on the Debtor's Application for the Use of Cash Collateral. The FMNB opposed the application and countered with a motion for relief from the automatic stay and "adequate protection". "Adequate protection" is a modern phrase peculiar to bankruptcy practice and is asserted when a secured creditor deems his collateral is insufficient security for the loan. The October 19 hearing was continued to December 5 and 7 of 1984 and finalized on January 11, 1985. Each hearing required rulings by the Court since the farming operation was ongoing with daily requirements and changing circumstances. There have been two appeals of the Court's interim rulings to the United States District Court.

In a response to several creditors' request for the appointment of a trustee, the Court on October 22, 1984, appointed Dennis M. Ford.

It is inherent that a reorganizing debtor will be faced with obstacles presented by the various creditors. However, this Debtor has been involved in extensive litigation in his effort to keep his farming operation alive.

During the first hearings before the Bankruptcy Court, the Debtor was faced with the claim by FMNB that they were undersecured. It is noted that throughout the case, Agrow was oversecured.

However, as the case advanced, First Mississippi National Bank confronted the Debtor with the proposition that they were oversecured and thus entitled to their attorney's fees pursuant to 11 U.S.C. § 506(b).

After a number of other hearings, the Bank has now presented another obstacle for the Debtor's reorganization. The Bank has requested that it be allowed to enforce its dragnet clauses and apply assets of Ladner Farms to debts incurred by other entities of the Debtor.

The deadline for filing proofs of claim was April 8, 1985. FMNB failed to file its claim. Under the authorities governing the filing of a proof of claim, the Court doubts that it needs to reach the "dragnet" issue but it shall be considered and resolved in the findings of fact and conclusions of law.

When the Debtor voluntarily filed his Chapter 11 petition he sought the relief assured by the Code, 11 U.S.C. § 301, which states in part:

"The commencement of a voluntary case under a chapter of this title constitutes an *order for relief* under such chapter."

To date, the only relief this Debtor has received is an ongoing battle in Court for survival.

In a response to a question by the Court on this subject the Debtor articulated his position probably better than anyone when he replied:

"Well, sir, it's, in all honesty, I recognized the situation two years ago, and I attempted to start doing something way ahead of time before anybody called it to my attention. I ran into a stumbling block with First Mississippi, and negotiations have slowed down. But not taking up much of your time, sir, sure, it's helped me; and I've thought a lot of things. But I thought Chapter 11 was to be a degree of relief. We haven't had a lot of relief, sir. We've been working under very adverse, strenuous conditions on me and my employees. We have been accused of stealing, lying. The opposition has fought us, I think, extremely too hard. We've worked overly hard, not just me, but my people, sir." (Transcript of testimony of Dickie Joe Ladner, April 18, 1985).

The provisions under the Code are equally protective of the Debtor's creditors through the reorganization process. This protection extends to secured as well as to unsecured creditors, and the Court must balance each of the various interests before it.

At the onset of this proceeding, First Mississippi National Bank was owed approximately 1.3 million dollars. This debt has now been fully repaid. The debt to Agrow Credit Corporation has been completely retired. It should be noted that the largest secured creditor, Federal Land Bank, which is owed approximately six to seven million dollars, has continued to be in full support of the Debtor's plan. Moreover, the general creditors, through an active creditors' committee, have supported the debtor's plan throughout these proceedings.

## I. ATTORNEYS FEES FOR AGROW AND FMNB

### *Findings of Fact and Conclusions of Law*

1. Agrow and FMNB seek to recover attorneys fees and out-of-pocket expenses pursuant to 11 U.S.C. § 506(b) from the proceeds of the Ladner Farms cattle sales, which sales were in progress at the April

16–18 hearing and have been concluded since the hearing.

2. At all material times, Agrow and FMNB have been oversecured creditors in this Chapter 11 proceeding as contemplated pursuant to 11 U.S.C. § 506(b).

3. Agrow seeks, as reasonable attorneys fees and expenses, $90,000.00. FMNB seeks, as reasonable fees and expenses, $80,000.00.

4. In this Chapter 11 proceeding, there was never a real possibility that Agrow and FMNB would not be paid in full.

5. The services of the attorneys for Agrow and FMNB were not beneficial to the administration of the estate, or to the plan of reorganization submitted by Debtor which was confirmed by the Court in its bench ruling at the conclusion of the hearing.

6. The legal and factual issues in this case were not novel or difficult, in that all factual and legal issues were typical of Chapter 11 reorganization proceedings.

■ 7. The only aspect of this case that was not typical of a Chapter 11 reorganization proceeding was the time and labor expended by Agrow and FMNB which in this Court's opinion was excessive. This Court will not attempt to determine the zeal with which attorneys represent their clients or follow their instructions. On the other hand, this Court must make its independent judgment on reasonableness of that time and effort.

■ 8. This Court is charged with the responsibility to make an independent determination of the reasonable necessity of the services and the appropriate charges for those services as they apply to the specific matters before the Court. *In Re Erewhon, Inc.*, 21 B.R. 79, 86 (Bkrtcy.D. Mass.1982).

9. This Court is further guided, with respect to the issue of attorneys fees, by the case of *In the Matter of First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir. 1977), and the 12 factors for consideration of an attorneys fees enumerated therein.

■ 10. The Court concludes and rules that there is no authority, under the Bankruptcy Code, for reimbursement of fees and expenses paid by FMNB to its appraisers.

■ 11. The Court concludes and finds, being guided by the factual findings and the conclusions of law stated above, that a reasonable attorneys fee, and reasonable expenses, for the attorney for Agrow Credit Corporation is $30,000.00 attorney's fee and $2,000.00 expenses, and that a reasonable attorney's fee, and reasonable expenses, for the attorneys for FMNB is $26,-500.00 attorney's fee and $1,000.00 expenses.

## II. DRAGNET CLAUSE

### *Findings of Fact*

1. The Court must determine whether the "dragnet clause" of the deed of trust executed by Robinwood Forest, Inc. to FMNB, causes that deed of trust to stand as security for the debt of Coastal Plains, a partnership of which Debtor is a partner. Likewise, the Court must determine whether the dragnet clause of the security agreement executed by Debtor and the Trustee, stands good for the Coastal Plains debt, and whether the land deed of trust executed by Debtor and the Trustee operates to secure the Coastal Plains debt.

2. The Robinwood Forest deed of trust was executed November 23, 1984, after the petition in this case was filed. No new money was advanced by the Bank to Robinwood; this deed of trust was renewal of a prior deed of trust executed by Robinwood on July 18, 1984. Likewise, no money was actually loaned in July by the Bank to Robinwood. The deed of trust was simply collateral for a continuing guaranty of the Debtor's farm loan at FMNB.

3. In the November 23, 1984 "Robinwood" deed of trust, it is recited that the purpose of the instrument is "to secure the prompt payment at maturity of the said indebtedness of Dickie Joe Ladner, doing business as Ladner Farms, debtor-in-pos-

session ... and any other or further indebtedness of the said Dickie Joe Ladner, doing business as Ladner Farms, debtor-in-possession ... may now or hereafter incur with or owe to the beneficiary..."

4. The Court finds that the dragnet clause of this deed of trust clearly and unambiguously recites that its purpose is to secure the debt of "Dickie Joe Ladner, doing business as Ladner Farms." No mention is made of Debtor's other indebtedness—only his debt connected with his farm operation. The Court also notes that the final maturity date of this deed of trust is stated to be July 2, 1985, a date which coincides with a point in time at which it is generally expected that Debtor's farm loan for the next crop cycle would be renewed.

5. A similar analysis guides the Court in consideration of the security agreement and deed of trust executed by the Debtor, his wife, and the Trustee on October 26, 1984, pursuant to this Court's order of October 25, 1984. The security agreement and deed of trust were executed to secure the post-petition farm loan advanced by FMNB to Debtor pursuant to the agreed order entered by the Court October 25, 1984. These instruments are renewals of pre-petition debt instruments. There was no intent that the dragnet clauses in the security agreement as the deed of trust should act to secure any debt other than the farm loan, or, as the instrument themselves recite, "Dickie Joe Ladner, d/b/a Ladner Farms, debtor-in-possession." The Trustee joined in the execution of the security agreement, which is also significant, since the Trustee was concerned solely with the Debtor's farm operation.

6. The Debtor did not intend to obligate the assets of Dickie Joe Ladner d/b/a Ladner Farms or Robinwood Forest, Inc. for the debt of Coastal Plains, or any other entity, to FMNB. The sole purpose of these security instruments was the securing of the Debtor's loan pertaining to his farming operations.

7. The deed of trust executed October 26, 1984, from Dickie Joe Ladner d/b/a Ladner Farms, debtor-in-possession, and his wife, Glenda J. Ladner, and Dennis M. Ford, Trustee, to First Mississippi National Bank, was introduced into evidence at the December 5 and 7, 1984 hearing as Exhibit # 51 on page 197 of Volume II of II Volumes. The deed of trust contains a "defeasance" clause in paragraph 21 which states that: "If all indebtedness secured hereby shall be promptly paid when due and owing, including all interest due thereon at the rate herein specified, then in that event this conveyance shall be null and void..."

8. The record evidence presented at the hearing indicated that the proceeds from the cattle sales would soon after the hearing pay off the indebtedness to Agrow and FMNB, whose balances were in the process of being reduced from the cattle sales before, during and after the hearing.[1]

*Conclusions of Law*

The "dragnet" clauses in the above-executed documents shall not be enforced by this Court. The Bank should be made to rely on its deeds of trust with Coastal Plains and Robinwood, and the specific collateral secured thereunder, in order to satisfy the debts owed by Coastal Plains and Robinwood.

The Court is well aware of the reported cases cited in the Bank's brief and the principles of law that dragnet clauses *per se* are not invalid or unenforceable in Mississippi. However, these cases differ in their factual makeup from the case at bar. Those cases involve a person who is a debtor in all of the debt instruments attempted to be included under a dragnet clause. However, the Bank is attempting to collect the separate and distinct debts of Robinwood and Coastal Plains, from the collateral pledged by Ladner d/b/a Ladner Farms. None of the cases cited by the Bank is analogous to the facts at bar.

---

1. Subsequent to the hearing, the Trustee filed a final report of cattle sales and disbursements on May 7, 1985, which indicates that Agrow and FMNB have been paid in full on the Dickie Joe Ladner d/b/a Ladner Farms note.

Moreover, the Court is unaware of any Mississippi cases that involve a similar fact pattern. However, cases from other jurisdictions support the contention that these dragnet clauses should not be given effect.

■ A dragnet clause should not be given effect if it does not appear that the debt's inclusion in a deed of trust was intended or contemplated by the parties. In the case of *Mohler v. Buena Vista Bank & Trust Co.*, 42 Colo.App. 4, 588 P.2d 894 (1978), the Court there held that a promissory note which was endorsed by a corporation to a bank with recourse after the deed of trust was executed, and on which the bank had obtained a judgment against the corporation, was not covered by a dragnet clause in the deed of trust which secured a sum certain, "and all other sums, liabilities and demands, direct or contingent, now or hereafter owing ... to the bank, from the grantors." The deed of trust and related documents had been executed by both Mohler and the corporation. The Court went on to state that a dragnet clause should be strictly construed against the party drafting it, and that this dragnet clause should not be given effect unless the parties reasonably contemplated this effect. The Court concluded that the parties did not contemplate that the dragnet clause should apply, and therefore, the Court held that the dragnet clause should not be given effect. More specifically, the Court commented:

> We note, however, that the clause states that only those sums owing to the bank "from the *grantors*" are secured by the deed of trust. The "grantors" were "W.L. Mohler, d/b/a W.M. Sales, Inc." The recourse note which was assigned to the bank was payable only to W.M. Sales, Inc., and was assigned by the corporation to the bank. It thus appears that the bank's only recourse was against the corporation. *If the corporation alone owes a debt to the bank, then this is not a sum owed to the bank "from the grantors" of the deed of*

> *trust, within the contemplation of the parties to that instrument."*

*Id.*, 588 P.2d at 896.

The Bank should not be allowed to "dragnet" the Coastal Plains debt into these proceedings. In *United States v. American National Bank*, 255 F.2d 504 (5th Cir.1958), *cert. den.* 358 U.S. 835, 79 S.Ct. 58, 3 L.Ed.2d 72 rehearing denied 359 U.S. 1006, the Fifth Circuit held that the dragnet clause in a mortgage, which was signed by a husband and wife, did not cover the husband's liability *as a partner and endorser on a partnership note* previously given to the bank, or his liability as an endorser on another note given by an individual to the partnership and discounted by the bank. The Court reasoned that the clause did not express any intent to include such obligation.

Another case of similar import is *Airline Commerce Bank v. Commercial Credit Corp.*, 531 S.W.2d 171 (Tex.Civ.App.1975), in which the Court held that a note to a bank, which was executed by a partnership and by two individuals as guarantors, was not secured by a deed of trust on a parcel of real estate which had previously been given by the two individuals and their wives to the bank to secure another note. The latter deed of trust recited that it secured any existing or future indebtedness between the parties. The Court held that the partnership note was not contemplated by the parties as included by the deed of trust at the time it was executed. The Court accordingly refused to enforce the dragnet clause in that instance.

Other Courts have defeated dragnet clauses on the basis that the deed of trust in question also contained a "defeasance" clause, which stated that if the note be paid in full, conveyance should become null and void. In the case of *Underwood v. Jarvis*, 358 So.2d 731 (Ala.1978), the Court held that a reading of such a clause pointed to the fact that the dragnet clause did not appear to be intended or contemplated by the parties. In the deed of trust from Dickie Joe Ladner d/b/a Ladner Farms, Debtor-in-Possession, and his wife, Glenda

J. Ladner, and Dennis M. Ford, Trustee, to the Bank, dated October 26, 1984, paragraph 21 of said document states that: "If all indebtedness secured hereby shall be promptly paid when due and owing, including all interest due thereon at the rate herein specified, then in that event this conveyance shall be null and void..." Applying *Underwood* as the controlling authority in this case the "defeasance" clause defeats the dragnet position asserted by FMNB.

■ It taxes credulity to believe a trustee in a Chapter 11 case, struggling as he does to keep a debtor afloat, would even consider adding to the financial obligations of a debtor by his (the trustee's) execution of a dragnet deed of trust. The trustee's intent, if he is to faithfully discharge the obligations of his oath, is always to decrease debt. That a trustee even has the power, under the Code, to put a debtor's assets in such a vise is worthy of no real argument.

In another case, *Freese Leasing, Inc. v. Union Trust & Sav. Bank*, 253 N.W.2d 921 (Iowa 1977), the Court stated that the decisive issue was whether the mortgagor and the bank intended the later advances for the mortgagor's used car business to be covered by the dragnet clause in another deed of trust, and concluded that no such intent existed. The Court noted that the contrary intent appeared because the subsequent advances were not related to the mortgage debt. The Court emphasized that dragnet clauses are not favored in equity and should be carefully scrutinized and strictly construed.

In the case of *First Security Bank of Utah v. Shiew*, 609 P.2d 952 (Utah 1980), the Court refused to enforce a dragnet clause in a home mortgage against a later indebtedness arising from the financing of a cattle venture. The security agreement for the latter loan failed to mention that the obligation was also secured by the real estate mortgage.

■ In conclusion this court has more than sufficient evidence before it that the indebtedness sought by the Bank to be brought into the proceeding is indebtedness involving Robinwood Forest, Inc., a separate legal entity, and Coastal Plains Farms, another separate legal entity involving Mr. Ladner and a Mr. Ramsey. The cases cited herein support the proposition that the most important element for a Court to determine is: "What was the intention of the parties when they executed these various instruments?" The cases cited herein also emphasize that this question can be answered by analyzing whether the parties to the various instruments are one and the same. These documents clearly show that the "parties" are not the same in the documents executed by Ladner d/b/a Ladner Farms, versus the documents executed by Coastal Plains and by Robinwood Forest, Inc.

Furthermore, the Bank has been completely paid by "Ladner d/d/b Ladner Farms." (See Footnote on page 10). Therefore, the defeasance clause operates to negate the dragnet clause.

Lastly, the Bank failed to timely file its Proof of Claim, in order to claim its alleged rights in these dragnet clauses. The Bank is not an unsophisticated creditor in bankruptcy proceedings, and it should not be lightly excused from meeting deadlines required of all other creditors.

## III. CONFIRMATION

On April 18, 1985, the Court held a confirmation hearing of the Debtor's plan. Prior to the hearing the Court heard and ruled upon a motion filed by FMNB challenging the disclosure approval asking the Court to set aside the Order Approving Disclosure. Since approval of disclosure is a statutory prerequisite to confirmation to a plan, the Court shall address the challenge to disclosure first before proceeding to its ruling on confirmation.

### A. FMNB'S CHALLENGE TO DISCLOSURE

*Findings of Fact*

1. On March 8, 1985, a Disclosure Statement was filed on behalf of the Debtor.

2. On March 15, 1985, a Motion for Reduction of Time for Hearing on Disclosure Statement was filed on behalf of the Debtor.

3. On March 18, 1985, the Court entered an Order Allowing Reduction of Time setting April 1, 1985, as the last day for filing objections to disclosure. It also set the hearing on approval of disclosure statement, which was duly noticed.

4. On April 8, 1985, an Order Approving Disclosure Statement was entered by this Court, there being no unresolved objections.

5. On April 17, 1985, FMNB filed a Motion to Set Aside Order of April 8, 1985. This motion was overruled by the order of this Court on April 18, 1985, and FMNB has filed a Notice of Appeal from this order.

### Conclusions of Law

11 U.S.C.S. § 1125 deals with post petition disclosure and solicitation. Subsection (b) reads as follows:

"An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title [11 USCS §§ 1 et seq.] from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets."

According to H.R.Rep. No. 595, 95th Congress, 1st Sess., at 227 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787, Section 1125(b) is the operative subsection of section 1125 and clearly prohibits solicitation of acceptances or rejections of a proposed plan after the commencement of a case unless and until there is transmitted to the holder of the claim or interest solicited, the plan of reorganization or a summary of such plan and a written disclosure state-

ment which has been approved by the court. Court approval must be after notice and hearing. If an objection to a proposed disclosure statement is filed, the court must determine that the disclosure statement contains "adequate information."

As the House and Senate Reports note in connection with section 102(1) which construes the phrase "after notice and a hearing":

"... [A] hearing will not be necessary in every instance. If there is no objection to the proposed action, the action may go ahead without court action. This is a significant change from present law, which requires the affirmative approval of the bankruptcy judge for almost every action. The change will permit the bankruptcy judge to stay removed from the administration of the bankruptcy or reorganization case, and to become involved only when there is a dispute about a proposed action, that is, only when there is an objection."

"Given the statutory construction of the term 'after notice and a hearing', affirmative action by the court is not required with respect to an application for approval of a disclosure if there is no objection to the application. This construction of section 1125(b) is quite reasonable if one considers that mandatory review by the court of disclosure statements where there is no objection in contrary to the intent of Congress of separating the court wherever possible from the administration of the case." *Collier on Bankruptcy*, § 1125.03.

According to First Mississippi National Bank's Motion to Set Aside Order of April 8, 1985, their attorney and the debtor's attorney agreed to forego the disclosure statement step. As this court interprets § 1125(b), the disclosure statement approval is a statutorily required step in having a plan confirmed. This court will not depend on out of court agreements between attorneys to which the court has no knowledge to change the bankruptcy law. The order approving the disclosure

statement was entered thirty days after it was filed with the Court. There were no objections to the disclosure statement in existence at the time the order was entered and no proper objection to the disclosure statement had been filed at the time First Mississippi National Bank filed its motion to set aside.

 Therefore, after finding that notice has been given and an opportunity to object and have a hearing had been given, this court entered its order of April 8, 1985, approving the disclosure statement. Furthermore, this Court deemed that foregoing approval of the disclosure statement was not within the discretion of this court, much less by agreement between the debtor's attorney and the attorney for one of the creditors. First Mississippi National Bank's motion was properly denied.

## B. CONFIRMATION OF PLAN

### Findings of Fact and Conclusions of Law

1. The plan submitted by the debtor complied with the applicable provisions of Title 11, U.S.C.

2. The proponent of the plan complied with the applicable provisions of 11 U.S.C.

3. The plan has been proposed in good faith and not by any means forbidden by law. Any payment made or to be made by the proponent (debtor), for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the Court as reasonable.

4. The proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

5. With respect to each impaired class of claims or interests—(A) each holder of a claim or interest of such class has accepted the plan and/or will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of this title on such date.

6. With respect to each class of claims or interests which has not accepted the plan and which is impaired, the Court finds and rules that the plan should be confirmed inasmuch as it does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interest that is impaired under, and has not accepted the plan.

 7. The Court specifically finds, concludes, holds and orders that debtor shall be entitled to consummate present and future sales of real property owned by debtor as set forth in the disclosure statement filed herein, as set forth in the first amended plan of reorganization as filed herein, without further order of this court. The trustee shall hold the proceeds of such sales until Agrow or FMNB are paid in full as described in paragraph 8 below. If necessary, he shall issue such amounts of the proceeds as may be necessary to pay those creditors in full. Any excess of such cash collateral shall be used for the debtor's operations which are approved under the plan.

8. The Court further finds, concludes, holds and orders that Agrow and FMNB, as soon as they are paid in full, including principal, interest and attorneys fees shall thereupon immediately satisfy and cancel all deeds of trust, uniform commercial code financing statements, liens upon motor vehicles, with respect to all collateral, owned by Dickie Joe Ladner d/b/a Ladner Farms, upon which said creditors hold liens. When the trustee files the notice with the Court that he has paid Agrow and FMNB in full, the Court shall issue a supplementary order or orders for filing purposes in the appropriate county or state offices, satisfying and releasing the appropriate security agreements, deeds of trust, or other evidence of indebtedness. Additionally, the Court finds, concludes, holds and orders that FMNB return to debtor all life insur-

ance policies, in its possession, which were assigned to FMNB as collateral.

9. The Court further finds, concludes, holds and orders that, upon payment in full of all principal, interest and attorneys fees due to Agrow and FMNB from debtor, this order confirming the first amended plan of reorganization and any supplementary orders issued pursuant to the preceding paragraph of this order, may be spread upon the appropriate books and records of the Chancery Clerks of Hancock, Harrison, Pearl River, Stone and Jefferson Davis Counties, and upon the appropriate books and records of the Secretary of State of Mississippi, evidencing this Court's order satisfying and cancelling all liens held by Agrow and FMNB upon property owned by Dickie Joe Ladner d/b/a Ladner Farms.

## IV. DEBTOR'S MOTION FOR AUTHORITY TO SELL PROPERTY IN LADNER FARMS AND ROBINWOOD CHAPTER 11 PROCEEDINGS

### Findings of Fact

The Court finds that the terms and conditions of the proposed sales of debtor's property, as set forth in the disclosure statement, first amended plan of reorganization, motion for authority to sell property in this Chapter 11 proceeding and in the Robinwood Forest, Inc. Chapter 11 proceeding, are fair and reasonable and result in great benefit to both estates and to the creditors of both estates.

### Conclusions of Law

The Court finds, concludes, holds and orders that both the motion in this Chapter 11 proceeding and the motion in Robinwood Forest, Inc., for the authority to sell real property are both well-taken, and debtor and trustee are authorized to consummate and assume the proposed contracts for the sale and purchase of real estate attached to said motion, and debtor is authorized to utilize the cash collateral generated thereby in his farming operation. Said cash collateral is to be held until Agrow or FMNB is paid in full as described in § III, Paragraph 8, *supra.*

### Conclusion

At the conclusion of the hearing, the Court rendered a bench opinion which is incorporated herein by reference.

This proceeding points up two salient facts: (1) a Chapter 11 proceeding can work and (2) bankruptcy reorganizations take time for their fruit to ripen.

Chapter 7 liquidations dictate, many times, the interest of creditors is better served by moving quickly. Not so, in Chapter 11. Congress recognized that creditors want their money but this desire must be weighed against taking a loss if an immediate sale is had against everyone profiting if a measure of patience is exercised. Judge Barbour recognized this in his ruling on the January 24, 1985 hearing before him. This may be the law of the case. If a debtor's business is based on the rate at which grass will grow, as is the case here, or cattle will turn it into rib-eye steaks or filet mignons, a bankruptcy court must yield to this time frame. So must creditors. This fact dictated the relationship between the debtor and his creditors long before the Chapter 11 petition was filed.

However it may be termed, and whatever may be the language, it boils down to the underlying sense of Congress in a Chapter 11 case. A debtor must be given a chance. Mother Nature persuades this Court and creditors; not the reverse.

Most businessmen want courts and creditors to leave them alone so they can run their businesses. History has proved this is the best way. When a businessman seeks bankruptcy protection he forfeits a measure of this freedom. But this Court refuses to believe a Chapter 11 is either a jail sentence or unconditional surrender. A petition is a cry for help not for liquidation under Chapter 7. Co-operation, carefulness, and planning for the future are indicated that all may profit. Circumstances change during a case's progress. This Court can accomodate itself to changing

circumstances under the Code. What does not change is the philosophy of a Chapter 11: an opportunity, under law, to remain a going concern with all the hopes and aspirations of former days. Whatever may be the end result of this case, it is now an accomplished fact that grass will grow and creditors are made whole thereby. It may be this is what Congress had in mind all the time.