PER CURIAM.
Gold Kist, Inc., and Autauga Quality Cotton Association (“Autauga Quality”) appeal from a judgment holding them liable for conversion of crops. The complaint, filed by International Mineral & Chemical, Inc. (“IMC”), accused them of conversion because they failed to satisfy the obligation of the debtor, Herman Majors, to IMC, as junior lienholder. Dixie Agriculture Supply Company (“Dixie Ag”), the priority lien-holder in this case, also appeals from a judgment holding it liable to Gold Kist and to Autauga Quality on the third-party complaint filed by both Gold Kist and Autauga Quality.
FACTS
Herman Majors, a Dallas County farmer, owns Herman Majors Fertilizer Service and Major Farms. In 1984, IMC took a security interest in Major’s grain, soybean, and cotton crops, to secure the payment for goods purchased by Majors from, IMC. This security interest was subordinate to liens on Majors’s crops held jointly by Dixie Ag and Alabama Spray and Supply. The security agreement between Majors and Dixie Ag and Alabama Spray contained a future advances clause and, therefore, allowed advances to be made to Majors that would still have priority over the rights of a junior lien holder. See § 7-9-204(3), Code of Alabama (1975).
When the crops were harvested, the grain and soybeans were purchased by Gold Kist and the cotton was purchased by Autauga Quality. Both companies issued a series of checks to pay for the crops, made jointly payable to Majors and Dixie Ag, the priority lienholder. Although Dixie Ag represented to both companies that it would notify them when its lien was satisfied, Dixie Ag endorsed the checks and returned them to Majors. Majors, then, from time to time, made payments to Dixie Ag in order to satisfy his debt. There was no evidence that either company knew that payments were being made by the other company.
In 1984, IMC filed suit against Majors, as well as Gold Kist and Autauga Quality. Counts one through four dealt with IMC’s charges against Herman Majors. In count five of its complaint, IMC charged that Gold Kist and Autauga Quality were guilty of conversion because they had purchased Majors’s crops without satisfying IMC’s security interest. IMC further charged that both Gold Kist and Autauga Quality had overpaid Dixie Ag, which IMC claimed was entitled to only $172,495.21. The total payments made by Gold Kist and Autauga Quality together equaled $352,878.59. IMC did not sue Dixie Ag.
Gold Kist argues that it was not liable to IMC for payments made jointly to Herman Majors and Dixie Ag. In support of this argument, Gold Kist contends that Dixie Ag’s security interest was not satisfied pri- or to December 21, 1984, the date of Dixie Ag’s notification to Gold Kist of satisfaction thereof; therefore, Gold Kist argues, it was correct in making continued payments to Dixie Ag as priority lienholder. The total payments made by Gold Kist were approximately $163,000.00. The crux of the case before us is whether the payments by Gold Kist and Autauga Quality, made jointly to Majors and Dixie Ag and, thereafter, endorsed by Dixie Ag and returned to Majors, constituted future advances. We are of the opinion that they were future advances and, therefore, we reverse and remand.
Section 7-9-204(3) reads as follows:
*225 “Obligations covered by a security agreement may include future advances or other value whether or not the advances are given pursuant to commitment.”
Pursuant to this section, Dixie Ag would be entitled to make future advances to Herman Majors as long as such action was permitted by his security agreement. “Future advances” clauses have been held valid in Alabama. Ex parte Chandler, i'll So.2d 360, 362 (Ala.1985), citing Underwood v. Jarvis, 358 So.2d 731 (Ala.1978), and First National Bank of Guntersville v. Bain, 237 Ala. 580,188 So. 64, 66 (1939).
Gold Kist contends that the trial court erred in holding that the endorsed checks that were returned to Majors did not constitute future advances. If the parties had intended these checks to constitute advances, reasons the trial judge in his order, Majors’s debt to Dixie Ag would have increased and, therefore, would have been reflected on the books of Dixie Ag. This reasoning is incorrect. If Dixie Ag received a check to which it was entitled, whether or not it was made out jointly to the debtor, Dixie Ag would mentally credit the debtor’s account for that sum of money. Endorsing the check and handing it back to the debtor is equivalent to lending the debtor that same sum previously credited. The effect of such a transaction would not increase the amount shown owing on Dixie Ag’s books; actually, the total sum owed would be exactly equivalent to the original debt. Therefore, while we certainly encourage bookkeeping which would accurately reflect such a simultaneous debit and credit, the trial judge’s assumption that there could be no intent to make a future advance unless this type of debit and credit process is reflected on the books, is, in our opinion, incorrect. In fact, we find the clear intent of the parties to be indicative of a future advance.
In determining that the intent did exist for a future advance, we consider that the evidence indicates that Majors used the proceeds from the endorsed checks to pay crop insurance premiums, land rent, picking, ginning, storage and transportation costs, and fuel bill. These expenditures were necessary in order for Majors to harvest his crops. In fact, there was testimony that Majors’s crops would not have been harvested without the money advanced to him by Dixie Ag. While we do not want to be interpreted as encouraging priority lien-holders to neglect making the necessary entries in their books, we consider the endorsement of the joint checks in this case to be well within the purpose behind the U.C.C.’s allowance of future advance clauses. Because future advance clauses are valid in Alabama, Ex parte Chandler, supra, and because the agreement between Dixie Ag and Majors provided for the advance of funds, we are of the opinion that the endorsements made by Dixie Ag in order for Majors’s crops to be harvested constituted future advances. This is the risk taken by a junior lienholder.
Therefore, we hold that IMC’s lien was subordinate not only to Dixie Ag’s original loan, but also to its future advances. IMC is not entitled to a judgment against Gold Kist or Autauga Quality, and Gold Kist and Autauga Quality, in turn, are not entitled to a judgment against Dixie Ag. For the foregoing reasons, the judgment of the trial court is reversed and the cause is remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES, HOUSTON and STEAGALL, JJ., concur.