**The BANK OF BREWTON, Plaintiff,**

v.

**GENERAL MOTORS ACCEPTANCE CORP., Defendant.**

Civ. A. No. 91–0907–B–C.

United States District Court, S.D. Alabama, S.D.

Nov. 2, 1992.

John L. Jernigan, Brewton, AL, for plaintiff.

George W. Finkbohner, Mobile, AL, for defendant.

## ORDER

BUTLER, District Judge.

This matter is before the court on submission by the parties for adjudication based on stipulated and agreed facts. The case presents two issues: 1) Did the individual mortgage from Kearney and Tice securing the Quality Chevrolet dealership property cross-collateralize the dealership debts secured by the personal guarantees of Kearney and Tice that were incurred the same day? and 2) Is GMAC entitled to the proceeds of sales of its secured collateral, which proceeds have been paid by the debtor to the Bank of Brewton?

### *Findings of Fact*

The facts are contained in the agreed facts of the pre-trial order and the supplement to the stipulated and agreed facts filed by the parties. The relevant facts will be applied in the conclusions of law.

*Conclusions of Law*

**The other debts were cross-collateralized**

 Whether a mortgage secures other indebtedness depends on the intent of the parties. *Ex Parte Chandler,* 477 So.2d 360 (Ala.1985). The bank contends that because GMAC did not pay any additional Probate Court recording fees over and above the principal amount of the stated indebtedness, this shows an intent not to cross-collateralize other debts of Kearney and Tice. The failure to pay recording fees on the amount of a cross-collateralized debt does not mean that the debt is unsecured, but is evidence of whether the parties intended the debt to be secured by the mortgage if the mortgage does not expressly state that it secures any and all debts. *See First Nat'l Bank of Guntersville v. Bain,* 188 So. 64, 67 (Ala.1939). The court must determine the intent of the parties by construing the consideration and defeasance clauses of the mortgage. *See Underwood v. Jarvis,* 358 So.2d 731 (Ala.1978). If the consideration and defeasance clauses are ambiguous or inconsistent, there is no cross-collateralization because such clauses are strictly construed against the drafter. *Id.*

 In the consideration clause, the mortgage of the dealership property states that the mortgage secures "the payment of said indebtedness and any renewals or extensions thereof and the interest thereon, and all other indebtedness *now or hereafter owed by any of the above-named to Mortgagee....*" (emphasis added) The defeasance clause of ‚the mortgage states that

> if Mortgagors shall well and truly pay and discharge *all the indebtedness hereby secured* (including extensions and renewal of the original indebtedness and additional advances) as the same shall become due and payable and shall ... do and perform all acts and agreements by them herein agreed ... the security interest herein granted shall become null and void. (emphasis added).

The Bank contends that the failure of either clause to specify, by amount or some other reference, the other debts incurred the same day as the mortgage was executed creates a doubt as to whether the parties intended to cross-collateralize the other debt. According to the Bank, GMAC could have specified those other debts in the mortgage. Nonetheless, despite the failure to specify which debt was cross-collateralized, the mortgage clearly evinces an intent to secure the other debt. The consideration and defeasance clause are not inconsistent. The consideration clause clearly includes "all other indebtedness." The defeasance clause states that until "all the indebtedness hereby secured" is paid, the mortgage would not be released. Thus, the mortgage is unambiguous that it secures all other debts incurred by the borrowers, including the debt evidenced by Kearney's and Tice's personal guarantees.

**GMAC has a lien on proceeds from sale of secured vehicles that were paid to Bank of Brewton on July 17, 1991**

 The Bank does not dispute that GMAC had a superior security interest on the vehicles in question. The Bank contends that, although GMAC had a lien on the proceeds of the sales, the lien was extinguished when Quality Chevrolet paid those proceeds to the Bank. "Where cash proceeds are covered into a debtor's checking account and paid out in the operation of the debtor's business, recipients take free of any claim which the secured party may have in them as proceeds," provided they are paid in the ordinary course of business. Ala.Code § 7-9-306, cmt., subd. 2(c).

The payment to the Bank in this case was not made in the ordinary course of business. On the morning of July 17, 1991, the bank returned $130,000 worth of checks payable to GMAC that were drawn on the operating account of Quality Chevrolet. Later that day, Quality deposited $99,935 into its payroll account at the bank. Quality then issued a check for $99,986.63 payable to the bank. Of the $99,935 deposited into the payroll account, $7,000 came from the proceeds of the sale of a vehicle to Santa Rosa, $9,059 came from the sale of a vehicle to Terrell, and $31,000 came from the sale of vehicles to South Alabama Auto Sales. The next day, the bank re-

turned to GMAC an additional $56,000 worth of checks drawn on Quality's operating account.

The facts in this case are similar to *Linn Cooperative Oil Co. v. Norwest Bank Marion, N.A.,* 444 N.W.2d 497 (Iowa 1989). In *Linn,* both the bank and the plaintiff were secured creditors of the debtor. The debtor sold property in which the plaintiff held a security interest and used the proceeds to pay off a different debt held by the bank. Despite the transfer from the debtor, the plaintiff retained a security interest in the proceeds. *Id.* In the instant case, with respect to the Santa Rosa, Terrell, and South Alabama proceeds, the Bank was on notice that the debtor had an obligation to GMAC that it could not meet; the Bank dishonored the check to GMAC. Shortly thereafter, the Bank accepted a check from the debtor's payroll account. This is not the type of transaction that qualifies for the protection of § 9–306.

GMAC has a lien on the proceeds from the sale of the Cadillac to McInnis in early July, 1991

■ Although the Cadillac proceeds were paid to the Bank before Quality Chevrolet bounced a check to GMAC—thereby making any later payment to the Bank not in the ordinary course—GMAC has a lien on those proceeds as well. The Bank admits that it did not do a UCC search that would have turned up GMAC's prior lien. *See Bank of Oklahoma, N.A., Grove Branch v. Islands Marina,* 918 F.2d 1476, 1481 (10th Cir.1990). If Quality Chevrolet double financed its floor plan, the Bank's deliberate ignorance of that does not extinguish the lien of the first secured creditor, GMAC.

Accordingly, GMAC has a lien on all traceable proceeds from the sale of secured vehicles in the amount of $68,009.43 plus interest from July 17, 1991.