326 So.2d 108

**Bernard S. MALKOVE**

v.

**The FIRST NATIONAL BANK OF MOBILE, a National Banking Association.**

**SC 982 and SC 982–X.**

Supreme Court of Alabama.

Jan. 9, 1976.

192

Richard L. Thiry, Mobile, for appellant and cross-appellee.

Reynolds & Lauten, Mobile, for appellee and cross-appellant.

FAULKNER, Justice.

Malkove appeals from a judgment of the Circuit Court of Mobile County. He al-

leges (1) the court erred in construing the future advance clause of a mortgage executed by Claude Gross, and Lee Anne Gross, to the Bank on September 11, 1969, and (2) the court erred in holding that a mortgage executed by the Grosses, on February 26, 1971, did not cancel the debt secured by the 1969 mortgage. The Bank cross-appeals from an order denying its motion to dismiss the appeal. We affirm in part, and reverse in part.

### The Facts

On September 11, 1969, the Grosses borrowed $3,500 for business purposes from the Bank, signed a note, and executed a mortgage on their home in Bay Minette. The mortgage was on a printed form containing a future advance clause, styled "dragnet" or "anaconda" by Malkove. This mortgage was recorded on September 16, and was not cancelled at the time the case was tried.

Subsequent to this loan, the Grosses incurred additional obligations to the Bank that included three installment loans, a BankAmericard account, and a signature loan. Apparently the financial fortunes of the Grosses grew markedly worse, and they moved to Miami. Threatened with foreclosure of the 1969 mortgage, the Grosses came to Mobile in 1971, and on February 26, executed a second mortgage to the Bank covering the balance of the original mortgage loan, and the subsequent indebtedness. A disclosure statement was given to the Grosses indicating their home was the security for their debt to the Bank. This mortgage, providing for 35 monthly payments commencing April 5, 1971, and one balloon payment payable on March 5, 1974, was not recorded until June 10. Meanwhile, Malkove filed suit against the Grosses on April 8, attaching the property, and recording a lis pendens notice. Judgment was rendered against the Grosses on July 1. Malkove brought the property at the sheriff's sale, and recorded the deed on September 30. On October 26, he notified the Bank of his interest in the property

and demanded the amount for redemption. The Bank disputed Malkove's claim of superiority of rights, and announced its intent to foreclose. Malkove filed his bill for declaratory judgment on December 15, and the Bank foreclosed on January 13, 1972, the same day it received Malkove's complaint.

## Contention of the Parties

### 1. Malkove

The main thrust of Malkove's argument at the trial was that the second mortgage worked a novation of the first mortgage. And, since the second mortgage was recorded subsequent to the lis pendens notice, he should have prevailed. Malkove argues further, if the second mortgage did not work a novation, then the first secured only the principal debt. He attacks the Bank for seemingly relying on the second mortgage to all of the Grosses' debts, then shifting its reliance on the first mortgage.

### 2. The Bank

The Bank argues that the second mortgage was a renewal, a consolidation, and an extension of the first mortgage. It says the future advance clauses are acceptable in Alabama, and the intent of the parties was to cover all indebtedness of the Grosses in the first mortgage. Moreover, the second mortgage did not work a novation of the first.

## The Mortgage Clauses

### 1. The Consideration Clause

"KNOW ALL MEN BY THESE PRESENTS, that CLAUDE EUGENE GROSS and LEE ANNE GROSS, husband and wife, (hereinafter called 'mortgagor'), in consideration of THREE THOUSAND FIVE HUNDRED AND NO/100 ($3,500.00) DOLLARS hereby acknowledged to have been paid to said mortgagors by THE FIRST NATIONAL BANK OF MOBILE, MOBILE, ALABAMA, (hereinafter called 'mortgagee'), and in order to secure the repayment of all amounts heretofore, herewith or hereafter owed by mortgagor to mortgagee, at any time before actual cancellation of this instrument on the records in the office of the Judge of Probate of Baldwin County, Alabama, or the foreclosure thereof, do hereby grant, bargain, sell and convey unto the mortgagee all that real property in the County of Baldwin, State of Alabama, described as follows: * * *"

### 2. The Defeasance Clause

"Providing always, and these presents are upon the express condition, that if the mortgagor shall well and truly pay to the mortgagee the said sum of $3,500.00 with interest thereon according to the tenor and effect of that certain waiver of exemption promissory note bearing even date and payable as follows: * * * said note being payable to the mortgagee at The First National Bank of Mobile, in Mobile, Alabama; and if the mortgagor shall perform all the covenants and agreements herein contained, then these presents shall be void; otherwise they shall remain in full force and effect."

### Advance Clause

"In addition to the aforesaid indebtedness and any and all extensions or renewals of the same or any part thereof, this instrument is intended to and does secure any and all debts, obligations, or liability direct or contingent, of mortgagor to mortgagee, whether now existing or hereafter arising at any time before actual cancellation of this mortgage on the Probate Records of Baldwin County, Alabama, or foreclosure thereof, and whether the same be evidenced by note, open account, guaranty, pledge or otherwise."

## Opinion and Conclusion

■ Were the debts incurred after the execution of the 1969 mortgage secured by the advance clause? We are of the opinion they were not. Whether other debts

between the same parties are secure under the advance clause depends on the intention of the parties. *Morgan County National Bank v. Terry,* 213 Ala. 313, 104 So. 762 (1925); *Monroe County Bank v. Qualls,* 220 Ala. 499, 125 So. 615 (1930); *First National Bank of Guntersville v. Bain,* 237 Ala. 580, 188 So. 64 (1939). In *Bain* this court stated, "If a debtor owes several notes, and gives a mortgage expressly securing one, any intention to cover other existing notes should be quite clear and explicit . . ."

In this case we find the defeasance clause provides that ". . . if the mortgagor shall well and truly pay to the mortgagee the said sum of $3,500.00 with interest . . ." *Bain* says a defeasance clause is intended to define the terms and conditions upon which a mortgage shall be satisfied, cease to be security for the debt, and become void. The clause may be misleading unless it indicates the debts to be paid before the mortgage ceases to be effective as security.

In *Bain* the defeasance clause read:

" 'Upon condition, however that upon the payment of the indebtedness hereby secured, this conveyance to be void, payment of taxes and insurance, the satisfaction of *prior incumbrances* and *other loans and advances to the mortgagor by the mortgagee before the full settlement and payment of this mortgage* and all expenses of recording are to be a part of this mortgage indebtedness.' " (Emphasis added.)

Cf. *City National Bank of Dothan v. First National Bank of Dothan,* 285 Ala. 340, 232 So.2d 342 (1970); *Martin v. First National Bank of Opelika,* 279 Ala. 303, 184 So.2d 815 (1966).

If the parties had intended the 1969 mortgage to include other loans, it would have been a simple matter to draft their intent in it. Furthermore, if they had intended coverage of other obligations in the 1969 mortgage, there would have been no necessity to have the 1971 mortgage executed. Construing the consideration clause and defeasance clause, we are of the opinion that the defeasance clause controls and precludes any other debts being secured under the 1969 mortgage.

### Novation

Novation involves three or more parties and consists of four requisites: 1. A previous valid obligation; 2. the agreement of the parties to the new contract; 3. the cancellation of the old contract; and 4. validity of the new contract. *A. M. Robinson Company v. Anniston Land Company,* 217 Ala. 648, 117 So. 29 (1928); *Hopkins v. Jordan,* 201 Ala. 184, 77 So. 710 (1918).

It is undisputed that the 1969 mortgage was not cancelled and satisfied of record. Cancellation of that mortgage would have been a prerequisite to work a novation. In our opinion, the intention of the parties was to keep alive the old mortgage. Cf. *Montgomery Bank & Trust Co. v. Jackson,* 190 Ala. 411, 67 So. 235 (1914). We conclude there was no novation.

### Motion to Dismiss

The Bank contends the trial judge exceeded his discretionary power by extending the time for filing the court reporter's transcript, and granting extensions, resulting in prejudice to it we do not agree.

Malkove appealed to this court on September 13, 1974, from the court's order dated March 15, by filing security for cost. The court reporter's transcript was due in the Register's office by November 12, but the court extended the time for filing until December 12. Another 30-days extension was granted by the court on December 12. This extended the time for filing the transcript until January 13, 1975. Meanwhile on December 23, the Bank objected to the

extension of December 12, and moved to have it set aside. The Bank alleged that the court reporter had moved out of Mobile, could not find his notes, and was unable to transcribe the testimony. The Bank's second reason for objecting to the extension was that the property was deteriorating. Before this motion was heard, the trial court granted another extension until February 12. On January 31, the court denied the Bank's motion to set aside the extensions of December 12 and January 10. On February 7 another extension was granted until March 14. The reporter's transcript was filed on March 3. The Bank filed motions to set aside the extension orders on February 27 and March 10. Both were denied. The transcript of the record was filed in this court on April 23.

We cannot say the trial judge abused his discretion. Regarding the extensions, this is what the trial judge said:

"THE COURT: Let me say it for the record now, we want to make this clear, back in June, I think it was, I got notice from the Court Reporter then, the one we are talking about, his physicians had stated to me that if he continued reporting cases he was going to suffer a mental relapse, a nervous breakdown. So, I immediately stopped any further activities in requiring him to report any cases. We have—for the two and a half years he has been with me, we have had, I think, a considerable amount of trial cases and he was actually my third reporter since I have been a Judge, and they have all quit due to nervous exhaustion. I don't know how long this one is going to last but in any event, that is the reason the Reporter, of course, was relieved of his duties. He is considerably behind. We have a number of cases involving criminal matters that the Defendants are in jail or in the penitentiary awaiting the rendition of the reports to the Court. There is some area where there is a limit as to how far the Court can push someone in that condition to get these transcripts up. In the event you push them over the hill, you never will get them. Most reporters are the only one that can read their notes. So, I think that should be a part of that record here, that this Reporter has been very ill, and as I understand is doing much better now. He has started turning in some transcripts and I have ordered him recently to turn in a transcript in a criminal case where the man has been in prison almost a year waiting for the appeal, and we have other matters which I would classify, of course, of considerably more importance than this case."

\*   \*   \*   \*   \*   \*

"THE COURT: And I would add to that I believe that in any appeal involving property you are necessarily going to have depreciation of the property pending the appeal even in the usual and normal course of a timely appeal, and I regret that we have this situation but that is the nature of the matter here."

We are of the opinion the trial court granted extensions for good cause, and was within his authority in granting them. *Southern Guaranty Insurance Company v. Jones*, 279 Ala. 577, 188 So.2d 537 (1966).

### Conclusion

1. That part of the court's order on the issue of novation is affirmed.

2. The order denying motion to dismiss is affirmed.

3. That part of the order holding that the 1969 mortgage was security for debts of the Grosses other than the original indebtedness secured by that mortgage is reversed.

4. Malkove has the right to redeem the property from the Bank upon payment of the principal balance, plus accrued interest, as of the date of his demand for charges necessary for redemption.

Affirmed in part, reversed in part, and remanded.

BLOODWORTH, JONES, SHORES and EMBRY, JJ., concur.

HEFLIN, C. J., recuses himself.

ALMON, J., does not sit.