In re Elton B. CROSBY, Jr.
and Betty A. Crosby.

Marvis M. STINSON and Judith
R. Stinson, Plaintiffs,

v.

Robert G. NICHOLS, Jr., Trustee, James
E. Lambert and Omnibank,
Defendants.

Bankruptcy No. 91–01357JC.
Adv. No. 91–0176JC.

United States Bankruptcy Court,
S.D. Mississippi,
Jackson Division.

May 7, 1993.

Howard C. Ross, Jr., Jackson, MS for plaintiffs.

Eileen Shaffer Bailey, Jackson, MS for James E. Lambert and Omnibank.

## MEMORANDUM OPINION

EDWARD ELLINGTON, Chief Judge.

This adversary proceeding came on for trial upon the Complaint of Marvis M. Stinson and Judith R. Stinson, wherein the Stinsons seek a determination by this Court of the proper disposition of funds generated by the foreclosure of the Debtors' home, upon which the Stinsons hold a third deed of trust. After considering the stipulation of the parties, the evidence presented at trial, together with arguments of counsel, the Court holds that the Stinsons are entitled to have their note secured by the third deed of trust satisfied out of the surplus remaining from the foreclosure proceeds after Omnibank's note secured by the second deed of trust and costs of foreclosure are satisfied. In so holding, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

On December 21, 1989, the Debtors, Elton B. Crosby and Betty A. Crosby purchased from the Stinsons a home located in Hinds County, Mississippi. As part of the purchase price for the home, the Crosby's assumed a promissory note in favor of Kimbrough Investment Company. The promissory note was secured by a first deed of trust on the home.

Also in connection with the purchase of the home, the Crosby's executed two additional notes and deeds of trust on the same date. The Crosby's executed one promissory note in the amount of $25,257.50 in favor of Omnibank. The note was secured by a second deed of trust on the home, which was recorded on December 28, 1989, in the Office of the Chancery Clerk of Hinds County, Mississippi. The Crosby's also executed a promissory note in the amount of $35,000 in favor of the Marvis and Judith Stinson. This note was secured by a third deed of trust on the home, and also was recorded on December 28, 1989 in the Office of the Chancery Clerk of Hinds County, Mississippi.

On January 12, 1990 the Crosby's executed an additional promissory note in favor of Omnibank in the amount of $30,007.50. The note states that the purpose of the loan was for working capital. In order to secure the note the Crosby's granted a fourth deed of trust on the home. The deed of trust was recorded on January 20, 1990 in the Office of the Chancery Clerk of Hinds County, Mississippi.

Finally, on June 1, 1990 the Crosby's executed a third promissory note in favor of Omnibank in the amount of $65,265 along with a fifth deed of trust on the home. On its face, the note states that its purpose was to combine the purchase money note, the working capital note, and an additional note that is not in issue. The deed of trust was recorded on June 27, 1990 in the Office of the Chancery Clerk of Hinds County, Mississippi.

On April 3, 1991 the Crosby's filed a joint petition for relief under Chapter 7 of the Bankruptcy Code, and on April 16, 1991 an order was entered lifting the automatic stay

as to Omnibank, and abandoning the home from the estate.

Upon the stay being lifted the Substituted Trustee under the second deed of trust, James E. Lambert, commenced foreclosure proceedings pursuant to applicable Mississippi law. A foreclosure sale was conducted by the Trustee on June 4, 1991, at which time Omnibank purchased the property with a bid of $56,000. A Substituted Trustee's Deed was executed conveying the property to Omnibank, and was recorded on June 4, 1991 in the Office of the Chancery Clerk of Hinds County, Mississippi.

From the proceeds of the foreclosure sale, the Trustee paid $39,352.59 to Kimbrough Investment, fully satisfying the indebtedness secured by the first deed of trust on the property. With the remaining sale proceeds, the Trustee partially satisfied Omnibank's December 21, 1989 note secured by the second deed of trust.

The Stinson's then commenced this adversary proceeding, seeking an accounting from the Trustee of the disposition of the foreclosure sale proceeds. The Stinsons claim the Trustee is required to pay their note secured by the third deed of trust out of any surplus remaining of the $56,000 foreclosure sale proceeds after paying off Omnibank's December 21, 1989 purchase money note secured by the second deed of trust and after paying costs of foreclosure.

### CONCLUSIONS OF LAW

No dispute exists as to the priority of liens on the property. As set forth above, the deeds of trust on the property were perfected in the following order:

1st Deed of Trust    Kimbrough Investment
2nd Deed of Trust    Omnibank
3rd Deed of Trust    Stinsons
4th Deed of Trust    Omnibank
5th Deed of Trust    Omnibank

The Stinsons acknowledge that the Trustee was required to satisfy Omnibank's December 21, 1989 note, secured by the second deed of trust, out of the $56,000 foreclosure sale proceeds. However, the Stinsons claim the Trustee had no authority to satisfy Kimbrough Investment's note secured by the first lien, and instead was required under

Mississippi law to apply any amount remaining after satisfying Omnibank's December 21, 1989 note secured by the second lien and costs of foreclosure to the Stinsons' note secured by the third lien.

Omnibank argues that the Trustee acted correctly in satisfying the indebtedness secured by the first deed of trust from the sale proceeds. Omnibank further argues that even if the Trustee was not required to pay the indebtedness secured by the first deed of trust, there still would be no equity to which the Stinsons would be entitled since Omnibank's second deed of trust contains both a "future advance" clause and a "dragnet" clause, which effectively secured the entire $66,408.78 due under the three notes held by Omnibank.

As to the appropriate disposition of the foreclosure sale proceeds, two issues must be addressed by this Court. The first is whether the Trustee had the authority to satisfy the indebtedness secured by the first deed of trust from the foreclosure sale proceeds. The second issue is whether the "future advance" clause and the "dragnet" clause contained in Omnibank's second deed of trust operate to secure the Crosby's entire indebtedness under the three promissory notes set forth above.

In addressing the foregoing issues, the Court must look to Mississippi law. While federal law is controlling as to bankruptcy proceedings, state law must be applied in determining the property rights of creditors. *Butner v. U.S.*, 440 U.S. 48, 54, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979); *See also Mutual Benefit Life Ins. Co. v. Pinetree, Ltd. (Matter of Pinetree, Ltd.)*, 876 F.2d 34, 36 (5th Cir.1989).

### AUTHORITY TO SATISFY DEBT SECURED BY SENIOR LIEN

"The general rule is that, where a surplus remains after satisfying a senior mortgage, it should be applied on the junior mortgage." *Great Southern Land Co. v. Valley Securities Co.*, 162 Miss. 120, 137 So. 510, 514 (1931).

The Mississippi Supreme Court in *Reese v. Ivey*, 324 So.2d 756 (Miss.1976) considered

the exact issue before this Court, namely, whether a trustee foreclosing under a second deed of trust must satisfy the first deed of trust out of the foreclosure sale proceeds. In holding that the trustee may not use the proceeds of the foreclosure sale to satisfy the first deed of trust, the court stated that "a foreclosure sale by the trustee in a junior deed of trust is made subject to prior liens on the property, and the trustee can sell and convey no better title than he acquired. Title vests in the purchaser subject to the prior lien." *Id.* at 757 (citations omitted). The court further stated:

> It was the purchaser's obligation to pay the first lien. The surplus left after paying the second mortgage, attorney's fee, and cost of foreclosure should have been paid over to the mortgagor, Reese. We hold that the Trustee had no authority to pay off the Commercial Bank deed of trust, and became liable to the mortgagor, Reese, for the amount thus paid.

*Id.* at 757.

This Court holds that Omnibank purchased the property at the foreclosure sale subject to the first deed of trust, and the Trustee had no authority to satisfy the debt secured by the first deed of trust out of the foreclosure sale proceeds.

### EFFECT OF FUTURE ADVANCE CLAUSE AND DRAGNET CLAUSE

■ Having decided that the indebtedness secured by the first deed of trust was improperly paid from the foreclosure sale proceeds, the Court next must consider whether the "future advance" clause and the "dragnet" clause contained in Omnibank's second deed of trust was effective to secure all three promissory notes held by Omnibank.

As previously stated, at the time of foreclosure the total amount due Omnibank under the three promissory notes was in excess of $66,000. If the second and third notes given by the Debtors to Omnibank were secured by the second deed of trust then no surplus would be available from the foreclosure sale proceeds to satisfy the Stinsons' note secured by the third deed of trust.

Omnibank's second deed of trust is a standard Mississippi Bankers Form Deed of Trust. The "future advance" clause contained in the deed of trust states in pertinent part as follows:

1. This Deed of Trust shall also secure all future and additional advances which Secured Party may make to Debtor from time to time upon the security herein conveyed. Such advanced shall be optional with Secured Party and Shall be on such terms as to amount, maturity and rate of interest as may be mutually agreeable to both Debtor and Secured Party. Any such advance may be made to any one of the Debtors should there be more than one, and if so made, shall be secured by the Deed of Trust to the same extent as if made to all Debtors.

The "dragnet" clause also contained in the deed of trust states in pertinent part as follows:

2. This Deed of Trust shall also secure any and all other indebtedness of Debtor due to Secured Party with interest thereon as specified, or of any one of the Debtors should there be more than one, whether direct or contingent, primary or secondary, sole, joint or several, now existing or hereafter arising at any time before cancellation of this Deed of Trust. Such indebtedness may be evidenced by note, open account, overdraft, endorsement, guaranty or otherwise.

In applying Mississippi law, this Court has previously held that "dragnet" clauses are valid and enforceable, stating as follows:

> The Mississippi Supreme Court has enforced "dragnet" clauses in deeds of trust in a variety of factual situations for more than sixty years. *Coombs v. Wilson* [142 Miss. 502], 107 So. 874 (Miss.1926); *Campbell Brothers v. Bigham* [149 Miss. 214], 115 So. 395 (Miss.1928); *Holland v. Bank of Lucedale*, 204 So.2d 875 (Miss.1967); *Trapp v. Tidwell*, 418 So.2d 786, 792 (Miss. 1982); *Whiteway Finance Company v. Green*, 434 So.2d 1351 (Miss.1983); *Walters v. M & M Bank of Ellisville*, 218 Miss. 777, 67 So.2d 714 (Miss.1953).

> The Mississippi Supreme court has excepted debts owed to third parties which

were later acquired by the holder of a deed of trust. *Hudson v. Bank of Leakesville,* 249 So.2d 371 (Miss.1971).

*In re Jennings,* No. 861209JC (S.D.Miss. July 9, 1987).

In July of 1992 the Mississippi Supreme Court again reiterated its position that "future advance" clauses are valid and enforceable in *Shutze v. Credithrift of America, Inc.,* 607 So.2d 55 (Miss.1992), stating:

Future advance clauses are enforceable according to their tenor. Accepting their creative and constructive role in a credit economy and, as well, freedom of contract, we have upheld such clauses for more than a century. *See Coleman v. Galbreath, Stewart & Co.,* 53 Miss. 303, 306 (1876). the point has been repeatedly litigated since, and we have repeatedly ruled, incident to a secured transaction, the debtor and secured party may contract that the lien or security interest created thereby shall secure other and future debts which the debtor may come to owe the secured party. Such clauses are treated like any other provisions in a contract and will be enforced at law subject only to conventional contract defenses, e.g., fraud, duress, and the like, none of which are present here.

*Id.* at 58–59.

In so holding, the court went on to explain the effect of "future advance" clauses on junior lienholders:

The principle undergirding *Whiteway* is that, for priority purposes, the lien securing the future advance takes its date from the recording of the original deed of trust and by operation of law reaches forward to secure the advance made after intervening rights became perfected.... Third parties dealing with the debtor ... are given notice by the public record that the recorded lien secures any future ·advances. Those third parties are charged at their peril to inquire of the debtor and prior secured creditors.

*Id.* at 63 (citations omitted).

As of July of 1992, the law in Mississippi seemed well settled as to "future advance" clauses and "dragnet" clauses. However, in November of 1992 the Mississippi Supreme Court apparently changed its position. Without making any reference to the *Shutze* decision, the court held in *Merchants National Bank v. Stewart,* 608 So.2d 1120 (Miss. 1992), that while the law is well settled that "dragnet" clauses are effective to include future debt within the scope of the security agreement, where uncertainty exists regarding the extent of debt intended by the parties to be secured by the collateral, the written instrument will be construed narrowly against the drafter. Furthermore, where the document contains boilerplate language the court will look to the parties' intent as to the collateral at the time the document was drafted.

It is from that perspective that we look to the language contained within the agreement to determine the intent of the parties at the time the agreement was drafted. If the document is clear and unambiguous as to the collateral securing other debts we have found intent to secure these debts....

The nature of the secured debt has also been examined in determining the validity of dragnet clauses with respect to other debt. Some courts have held that unless the debt is of the same nature, or type as the secured debt, the language will not cover the other debt. Moreover, the language "any and all other debts" ... has been interpreted to include only debts similar to the primary debt secured by the document.

*Id.* at 1126 (citations omitted).

Finding that the language of the security agreement was boilerplate, and finding that the primary debt was for money to purchase a farm while the subsequent debt was for a line of credit to be used for crop production, the court in *Merchants National Bank* held that the dragnet clause was not effective to secure the entire debt to the bank.

Likewise, in the present case, Omnibank's second deed of trust contains boilerplate language regarding future advances and other debts to be secured by the collateral. Additionally, the note secured by the second deed of trust on the property was for the purchase of the property, whereas the second note to

Omnibank was for working capital, and the third note to Omnibank was to combine the first, second, and an additional note held by Omnibank.

■ It is this Court's opinion that *Merchants National Bank v. Stewart* is the most current authority on the effect of "future advance" and "dragnet" clauses under Mississippi law. Therefore, in applying those principles set forth in *Merchants National Bank* this Court finds that the second deed of trust held by Omnibank was not effective to secure the second and third notes held by Omnibank. While both the second and third notes to Omnibank were independently secured by fourth and fifth deeds of trust on the property, the third deed of trust held by the Stinsons gives them superior rights to satisfy their third deed of trust from any amount of the foreclosure sale proceeds remaining after Omnibank satisfies its December 21, 1989 note secured by the second deed of trust and costs of foreclosure.

### CONCLUSION

Based on the foregoing, this Court holds that James E. Lambert, Substituted Trustee under the second deed of trust, was without authority to satisfy the indebtedness to Kimbrough Investment secured by the first deed of trust out of the proceeds of the foreclosure sale. Instead, out of the $56,000 foreclosure sale proceeds, the Trustee was required to first satisfy Omnibank's note dated December 21, 1989 secured by the second deed of trust and costs of foreclosure, and next to apply any amount remaining toward satisfaction of the Stinsons' note secured by the third deed of trust. If after satisfying the indebtedness secured by the third deed of trust there still remains a surplus, then the surplus should be applied to any remaining indebtedness to Omnibank secured by the fourth and fifth deeds of trust.

A separate judgment consistent with this opinion will be entered in accordance with Rules 7054 and 9021 of the Federal Rules of Bankruptcy Procedure.

### *FINAL JUDGMENT*

Consistent with the opinion dated contemporaneously herewith, it is hereby ordered and adjudged as follows:

1. From the foreclosure sale proceeds, James E. Lambert, the Substituted Trustee under Omnibank's second deed of trust, shall first satisfy Omnibank's promissory note dated December 21, 1989, together with all reasonable costs of foreclosure.

2. James E. Lambert shall next satisfy out of the remaining foreclosure sale proceeds the indebtedness to the Stinsons secured by the third deed of trust.

3. If there further remains a surplus, the Trustee shall apply any such surplus to the indebtedness secured by Omnibank's fourth and fifth deeds of trust.

4. The Trustee and the attorneys for the Stinsons and Omnibank are ordered to confer and calculate the specific amounts due the parties consistent with the Court's opinion.

This is a final judgment for the purposes of Rules 7054 and 9021 of the Federal Rules of Bankruptcy Procedure.

**SO ORDERED AND ADJUDGED.**