**In re Christopher A. SMINK
and Laurie A. Smink.**

**No. 01–10696.**

United States Bankruptcy Court,
N.D. Mississippi.

July 5, 2001.

Denvil F. Crowe, Tupelo, MS, for debtor.

D. Andrew Phillips, Oxford, MS, Thomas L. Segrest, Columbus, MS, for creditor.

*OPINION*

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is an objection to the confirmation of the debtors' Chapter 13 plan filed by AmSouth Bank, as successor in interest to First American National Bank and Deposit Guaranty National Bank, referred to hereinafter as AmSouth; response to said objection having been filed by the debtors, Christopher A. Smink and Laurie A. Smink; and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the subject matter of and the parties to this contested proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (K), and (O).

II.

On January 6, 1995, the debtors executed a promissory note and deed of trust in connection with a loan that they obtained from AmSouth's predecessor, Deposit Guaranty National Bank, in the sum of $79,443.60. The deed of trust, which was modified on two subsequent occasions, encumbered certain real property owned by the debtors in Pontotoc County, Mississippi. The second modification, dated April 19, 1999, indicated that the principal amount of the indebtedness had been reduced to $61,203.07. The deed of trust contained a typical dragnet clause which provides as follows:

This deed of trust secures not only the aforementioned indebtedness but also such future and additional advances of any and all nature as may be made to the Grantors, or any of them, by the Beneficiary (the Beneficiary to be the sole judge as to whether or not any such future or additional advances will be made), as well as, any additional indebtedness of any and all nature of the Grantors, or any of them, heretofore, now, or hereafter contracted with or otherwise acquired by the Beneficiary, before the cancellation of record of this instrument, whether such indebtedness be represented by promissory notes, open account, overdraft, or otherwise . . .

On May 19, 2000, Christopher A. Smink executed a second promissory note and security agreement with AmSouth in the amount of $25,000.00. To secure this indebtedness, Smink granted AmSouth a security interest in a 1995 Freightliner, which was appropriately perfected on the vehicle's certificate of title. Laurie A. Smink did not execute any of the documentation that was required for this transaction.

On February 12, 2001, the debtors filed their voluntary Chapter 13 bankruptcy petition. In their Chapter 13 plan, the debtors proposed to cure the pre-petition ar-

rearages due AmSouth under the deed of trust and to thereafter maintain the regular monthly payments in the sum of $709.75. Insofar as the Freightliner loan was concerned, the debtors proposed to pay AmSouth the sum of $15,000.00, their estimated value of the vehicle, plus interest at the rate of 12% per annum for a total distribution of $18,386.79, payable in monthly installments in the sum of $444.89. No payments were to be made on the unsecured deficiency portion of this second loan.

AmSouth objected to the confirmation of the debtors' plan asserting that the unsecured deficiency portion of the Freightliner loan was fully secured by the debtors' real property due to the aforementioned dragnet clause. The debtors' response to AmSouth's objection focused on the following:

1. That had AmSouth wished to secure the Freightliner loan with the debtors' real property as additional security, it should have specifically mentioned the earlier deed of trust in the Freightliner loan documentation.

2. The dragnet or future advances clause is ineffective to secure the Freightliner loan deficiency because it is written in boilerplate language, it was not intended by the parties to secure the Freightliner loan, and the Freightliner loan, being secured by a motor vehicle, is entirely different in character from the loan secured by the debtors' real property.

AmSouth correctly recognizes that this proceeding does not involve an antecedent debt. Rather, AmSouth relies exclusively on the efficacy of its dragnet clause in the deed of trust to secure the deficiency that has arisen as a result of the subsequent Freightliner loan.

## III.

■ State law determines the nature and extent of property rights in a bankruptcy context. *Butner v. U.S.*, 440 U.S. 48, 54, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979); *Mutual Benefit Life Insurance Co. v. Pinetree, Ltd. (Matter of Pinetree, Ltd.)*, 876 F.2d 34, 36 (5th Cir.1989).

■ As a subject of litigation, the dragnet clause has a lengthy history in Mississippi jurisprudence. In *Shutze v. Credithrift of America, Inc.*, 607 So.2d 55 (Miss. 1992), the Mississippi Supreme Court reiterated its position that "future advance" clauses are valid and enforceable:

> Future advance clauses are enforceable according to their tenor. Accepting their creative and constructive role in a credit economy and, as well as, freedom of contract, we have upheld such clauses for more than a century. (citation omitted) The point has been repeatedly litigated since, and we have repeatedly ruled, incident to a secured transaction, the debtor and secured party may contract that the lien or security interest created thereby shall secure other and future debts which the debtor may come to owe the secured party. Such clauses are treated like any other provision in a contract and will be enforced at law subject only to conventional contract defenses, e.g., fraud, duress, and the like
> . . .

*Id.* at 58–59.

In *Shutze*, the court made the following distinction between the terms "dragnet clause" and "future advance clause":

> The term "dragnet clause" connotes breadth of reach and is thought something more than a conventional future advance clause. Future advance clauses are one sort of debt included within dragnet clauses. All such clauses are

enforced by reference to their language and law and not their label.

*Id.* at 59.

The *Shutze* decision was rendered by the Mississippi Supreme Court in July, 1992. Ironically, in November, 1992, without even mentioning *Shutze,* the court rendered its decision in *Merchants National Bank v. Stewart,* 608 So.2d 1120 (Miss. 1992), which was initially thought to be a major departure from the "longstanding" Mississippi precedent enunciated in *Shutze.* Indeed, in *In re Crosby,* 185 B.R. 28 (Bankr.S.D.Miss.1993), Judge Edward Ellington commented as follows:

> As of July of 1992, the law in Mississippi seemed well settled as to "future advance" clauses and "dragnet" clauses. However, in November of 1992 the Mississippi Supreme Court apparently changed its position. Without making any reference to the *Shutze* decision, the court held in *Merchants National Bank v. Stewart,* 608 So.2d 1120 (Miss.1992), that while the law is well settled that "dragnet" clauses are effective to include future debt within the scope of the security agreement, where uncertainty exists regarding the extent of debt intended by the parties to be secured by the collateral, the written instrument will be construed narrowly against the drafter. Furthermore, where the document contains boilerplate language the court will look to the parties' intent as to the collateral at the time the document was drafted.
>
> > It is from that perspective that we look to the language contained within the agreement to determine the intent of the parties at the time the agreement was drafted. If the document is clear and unambiguous as to the collateral securing other debts we have found intent to secure these debts . . . .

The nature of the secured debt has also been examined in determining the validity of dragnet clauses with respect to other debt. Some courts have held that unless the debt is of the same nature, or type as the secured debt, the language will not cover the other debt. Moreover, the language "any and all other debts" . . . has been interpreted to include only debts similar to the primary debt secured by the document.

*Id.* at 1126 (citations omitted).

Finding that the language of the security agreement was boilerplate, and finding that the primary debt was for money to purchase a farm while the subsequent debt was for a line of credit to be used for crop production, the court in *Merchants National Bank* held that the dragnet clause was not effective to secure the entire debt to the bank.

Likewise, in the present case, Omnibank's second deed of trust contains boilerplate language regarding future advances and other debts to be secured by the collateral. Additionally, the note secured by the second deed of trust on the property was for the purchase of the property, whereas the second note to Omnibank was for working capital, and the third note to Omnibank was to combine the first, second, and an additional note held by Omnibank.

It is this Court's opinion that *Merchants National Bank v. Stewart* is the most current authority on the effect of "future advance" and "dragnet" clauses under Mississippi law. Therefore, in applying those principles set forth in *Merchants National Bank* this Court finds that the second deed of trust held by Omnibank was not effective to secure the second and third notes held by Omnibank. While both the second and third notes to Omnibank were independently secured

by fourth and fifth deeds of trust on the property, the third deed of trust held by the Stinsons gives them superior rights to satisfy their third deed of trust from any amount of the foreclosure sale proceeds remaining after Omnibank satisfies its December 21, 1989 note secured by the second deed of trust and costs of foreclosure.

*In re Crosby,* 185 B.R. 28, 32–33 (Bankr. S.D.Miss.1993).

Although *Merchants National Bank v. Stewart* clearly questioned the efficacy of a dragnet clause to encompass antecedent debts, the following comment, addressing whether a dragnet clause secures future debts, appears in the decision:

> It is well settled within this jurisdiction that a dragnet clause is valid to encompass future debts that a borrower may incur, within the security agreement, *Cochran v. Deposit Guaranty National Bank,* 509 So.2d 1045 (Miss.1987); *Whiteway Finance Company, Inc. v. Green,* 434 So.2d 1351 (Miss.1983).

*Merchants National Bank v. Stewart,* 608 So.2d 1120, 1125 (Miss.1992).

In 1995, three years subsequent to the *Merchants National Bank v. Stewart* decision, the Mississippi Supreme Court in *Iuka Guaranty Bank v. Beard,* 658 So.2d 1367 (Miss.1995), held that a dragnet clause, set forth in a deed of trust executed by co-tenants, was enforceable to extend the security interest to subsequent debts created by only one of the co-tenants. The language utilized by the court is pertinent to the instant proceeding:

> In the absence of allegations of fraud or ambiguities, the [dragnet or future advance] clause should be construed as written to cover subsequent debts created by one of the joint mortgagors individually. (citation omitted) There is no requirements that the co-tenants have knowledge of the existence of other debts, or each others' consent to the creation of debt and the attendant lien against the property, in order for the dragnet clause to be enforceable. *Newton County Bank v. Jones,* 299 So.2d 215, 219–20 (Miss.1974); *Holland v. Bank of Lucedale,* 204 So.2d 875, 877 (Miss.1967).

*Iuka Guaranty Bank* at page 1371.

The most recent pronouncement by the Mississippi Supreme Court on this issue is found in *Wallace v. United Mississippi Bank,* 726 So.2d 578 (Miss.1998), to-wit:

> Texie Rae Wallace argues that there is no mention of any *specific* antecedent debt in either of the assignments, and thus the bank wrongly assumed that the assignments allowed it to "dragnet" all debt, including that which existed before the assignments were executed. [footnote omitted] She argues that this Court's holding in *Merchants Nat'l Bank v. Stewart,* 608 So.2d 1120 (Miss. 1992) established the rule that antecedent debts will not be deemed within a dragnet clause unless they are specifically identified in the instrument. We note that this is an overstatement of the holding in *Stewart,* although at least one other court has cited the case for the same proposition. *See In re Lewis,* 212 B.R. 827, 829 (Bankr.E.D.Va.1997).
>
> In *Stewart,* this Court considered the scope of a hypothecation agreement containing a dragnet provision. The case involved the sale of a farm by the Stewarts to their son and son-in-law, who agreed that the purchase price would include a balance of $400,000.00 on the original purchase still owed by the Stewarts plus the assumption of a small business loan in the amount of $108,000.00. *Stewart,* 608 So.2d at 1122–23. A series of transactions then took place on the same day. First, the son and son-in-law each executed a deed of trust in favor of

the elder Stewarts in the amount of $170,000.00 for the purchase of land. Second, the son and son-in-law signed a second deed of trust in favor of the bank. This secured a note for the remainder of the purchase money, which was also guaranteed by the Farmers' Home Administration. Third, the son and son-in-law signed notes for crop production and irrigation loans. Finally, the elder Stewarts signed a hypothecation agreement in favor of the bank to collateralize these crop and irrigation loans. The security given by the Stewarts was an assignment of the first deeds of trust owed to them by the son and son-in-law. *Id.* at 1125.

The issue before the Court was whether the hypothecation agreement, executed for the purpose of securing the crop and irrigation loans, also covered the note for the purchase money secured by the second deed of trust. *Id.* The bank relied upon a dragnet clause in the agreement which granted the bank a security interest in said property to secure payment of such loan or loans, including but not limited to loans made under said line of credit, and all renewals and extensions thereof without limitation, including any loans that may be over said line of credit, *and also for any and all other indebtedness of Borrower to you, created at any time before you shall have received written notice from me terminating this Hypothecation Agreement* and all renewals and extensions thereof.

*Id.* at 1125 n. 4 (emphasis supplied by the *Stewart* Court).

In determining whether the dragnet clause encompassed existing debt, the Court in *Stewart* relied upon various general principles of law. As an initial matter, it noted that the intent of the parties at the time the agreement is drafted is crucial in matters of contract interpretation. *See id.* at 1126. *See also Newell v. Hinton*, 556 So.2d 1037, 1042 (Miss.1990); *Roberts v. Roberts*, 381 So.2d 1333, 1335 (Miss.1980). "If the document is clear and unambiguous as to the collateral securing other debts we have found intent to secure these debts." *Stewart*, 608 So.2d at 1126 (citing *Newton County Bank, Louin Branch Office v. Jones*, 299 So.2d 215, 218 (Miss.1974) and *Trapp v. Tidwell*, 418 So.2d 786, 792 (Miss.1982) ("[t]here is no question that dragnet clauses are enforceable if properly executed and stated in clear and unambiguous language.")). *Stewart* implicitly holds that where an agreement employs broad language which purports to secure all debts of a borrower, but does not specifically list existing debt, then the agreement is ambiguous as to whether the antecedent debt is secured by the agreement.

In such cases certain principles must be applied to determine the intent of the parties. First, it must be considered whether the dragnet clause employed in the agreement is "boilerplate." The *Stewart* Court noted that "[o]ften these clauses are not discussed between the borrower and the lender so that the borrower is not aware of the existence or the effect of these clauses." *Stewart*, 608 So.2d at 1126 (citing *United States v. American Nat'l Bank*, 255 F.2d 504 (5th Cir.1958); *Matter of Ladner*, 50 B.R. 85 (Bankr.S.D.Miss.1985); *First Sec. Bank v. Shiew*, 609 P.2d 952 (Utah 1980); *Underwood v. Jarvis*, 358 So.2d 731 (Ala.1978); *Mohler v. Buena Vista Bank & Trust Co.*, 42 Colo.App. 4, 588 P.2d 894 (1978)). Second, the nature of the secured debt must be examined to determine the validity of the dragnet clause with respect to other debt. Where the debt which the lender seeks to have included under the dragnet

clause is different in kind from the primary debt secured by the agreement, it is less likely that it was intended to be encompassed by the agreement. *Stewart*, 608 So.2d at 1126 (citing *Mark Twain Kansas City Bank v. Cates*, 248 Kan. 700, 810 P.2d 1154 (1991); *Shiew*, 609 P.2d at 957–58; *Wong v. Beneficial Sav. and Loan Ass'n*, 56 Cal.App.3d 286, 128 Cal.Rptr. 338, 342 (1976)). Third, heavy emphasis is placed on the fact that the antecedent loans are not listed in the agreement. "The rationale for excluding antecedent loans in that they are known to the lender at the time the agreement is drafted and should be included, if there is an intent to do so, since those loans are easily identifiable." *Stewart*, 608 So.2d at 1126 (citing *Lundgren v. National Bank of Alaska*, 742 P.2d 227, 235 (Alaska 1987); *First Nat'l Bank & Trust Co. v. Lygrisse*, 231 Kan. 595, 647 P.2d 1268, 1272–73 (1982); *Jarvis* 358 So.2d at 735; *Kamaole Resort Twenty–One v. Ficke Hawaiian Investments*, 60 Haw. 413, 591 P.2d 104, 112 (1979)). Finally, this Court will consider whether the debt which the lender seeks to have included under the dragnet clause is otherwise fully secured. *Id.* at 1127.

Applying these principles, the *Stewart* Court held as a matter of law that the dragnet provision of the hypothecation agreement did not encompass the second mortgages. *Id.* at 1126. The Court determined that the language used in the agreement was boilerplate, in that the agreement was a standard form used by the bank. The primary debt secured by the agreement was a line of credit to be used for crop production and irrigation, and was different in nature from the loans made to purchase the land. *Id.* at 1126–27. The bank was clearly aware of the antecedent debt which it sought to include under the

dragnet provision, and could have easily and explicitly included it within the agreement. *Id.* at 1126. Finally, the Court noted that the fact that the antecedent debt was otherwise fully secured further indicated that it was not intended to be included under the hypothecation agreement. *Id.* at 1127.

In the instant case, the circumstances present a closer question because of the second *Stewart* factor. On the same day he executed the assignments, Jerry Wallace took two business loans from UMB evidenced by note numbers 6816482 and 6843940. He pledged the CDs for these notes. The two loans were also secured by the assignments, however, as clearly stated on the face of the notes. Thus, the primary debt for which the assignments were executed—the two business loans—are of the same nature as the debts which UMB seeks to include under the dragnet clause.

All of the other *Stewart* factors, however, support a finding that the assignments do not include the antecedent debt evidenced by the notes numbered 6831523, 6873913, 6877617 and 6888036. As in *Stewart*, the dragnet language used by UMB in the assignments was boilerplate in nature as the assignments were on a standard form used by the bank. Moreover, there is a no question that UMB was aware of the antecedent debt. These loans were taken out directly from UMB within the six-month period preceding Jerry Wallace's death. Thus, there is no excuse for UMB's failure to specifically include these loans within the assignments if it intended them to be encompassed by the assignments. Finally, all four of the loans were otherwise secured. The notes numbered 6831523 and 6873913 were secured by a Security Agreement granting the bank a security interest in all chattel

paper owned by Jerry Wallace, as well as, a Trust Receipt granting the bank a security interest in certain trailer homes worth over $30,000.00. The notes numbered 6877617 and 6888036 were secured by the base note, which was in turn secured by "all new and used mobile homes" owned by Wallace Mobile Homes.

Written instruments are to be construed narrowly against the drafter when there is uncertainty or ambiguity as to the intent of the parties. *Id.* at 1126. *See also Clark v. Carter,* 351 So.2d 1333, 1336 (Miss.1977); *Stampley v. Gilbert,* 332 So.2d 61, 63 (Miss.1976). We conclude, therefore, that under these circumstances the dragnet clause in the assignments does not encompass the antecedent debt.

*Id.* at 586–588.

In *Wallace v. United Mississippi Bank,* the court focused more intently on the issue of whether an antecedent debt was secured by a subsequent security instrument. As noted above, an antecedent debt is not involved in this proceeding. This proceeding concerns the question of whether the deed of trust dragnet clause, which is drafted in "boilerplate" language, but which is otherwise unambiguous, is sufficient to secure the subsequent Freightliner loan obtained exclusively by Christopher Smink. In its opinion in *Wallace v. United Mississippi Bank,* the Mississippi Supreme Court re-examined its holding in *Merchants National Bank v. Stewart* and reiterated a four part test relative to the effectiveness of a dragnet clause:

1. It must be considered whether the dragnet clause employed in the agreement is "boilerplate."

While the dragnet clause, set forth in the deed of trust executed by the Sminks, is a provision in a standard form, it is clear and understandable. It applies to any future or additional advances of any nature that may be made to either of the Grantors, i.e., Christopher *or* Laurie Smink.

2. Where the debt, which the lender seeks to have included under the dragnet clause is different in kind from the primary debt secured by the agreement, it is less likely that it was intended to be encompassed by the agreement.

This element of the test is the most troubling for this court since it was not discussed in either *Shutze v. Credithrift of America, Inc.,* or *Iuka Guaranty Bank v. Beard.* Obviously, the loan secured by the Freightliner is different in kind from the loan secured by the Sminks' real property.

3. Heavy emphasis is placed on the fact that the antecedent loans are not listed in the agreement.

Since this proceeding is not an effort by AmSouth to secure an antecedent debt, this part of the test is not applicable.

4. Where the debt which the lender seeks to have included under the dragnet clause is otherwise fully secured, it is less likely that it was intended to be covered by the dragnet clause.

No evidence was introduced at the hearing concerning this part of the test. While the Freightliner loan may have been fully secured at its inception, it is clearly undersecured at the present time as evidenced by the Sminks' proposed valuation in their Chapter 13 plan.

Because this proceeding presents such a close question, the court has reviewed Restatement of the Law (Third), Property, Mortgages, Chapter 2. Future Advances, which provides as follows:

## § 2.4 MORTGAGES SECURING FUTURE ADVANCES NOT SPECIFICALLY DESCRIBED

A mortgage may secure future advances that are not made in connection with the transaction in which the mortgage is given, and that are not specifically described in the mortgage or other documents executed as part of that transaction, subject to the following limitations:

(a) The parties must have agreed that such future advances will be secured. Whether this agreement must be written and contained in the mortgage is governed by the principles of s 2.1(b) and (c).

(b) The advances must be made in a transaction similar in character to the mortgage transaction, unless

(1) the mortgage describes with reasonable specificity the additional type or types of transactions in which advances will be secured; or

(2) the parties specifically agree, at the time of the making of the advances, that the mortgage will secure them.

(c) If mortgaged real property is transferred, the mortgage will secure only advances made prior to the mortgagee's gaining actual knowledge of the transfer.

In *Lampley v. United States*, 17 F.Supp.2d 609 (N.D.Miss.1998), Judge Davidson offered the following comment: The Mississippi Supreme Court has noted on several occasions that dragnet clauses are valid and enforceable in the state of Mississippi. *Iuka Guar. Bank v. Beard*, 658 So.2d 1367 (Miss.1995); *Whiteway Finance Co., Inc. v. Green*, 434 So.2d 1351, 1352 (Miss.1983); *Trapp for Use and Benefit, etc. v. Tidwell*, 418 So.2d 786 (Miss.1982); *Newton County Bank, Louin Branch Office v. Jones*, 299 So.2d 215 (Miss.1974); *Holland v. Bank of Lucedale*, 204 So.2d 875 (Miss.1967); *Walters v. Merchants & Manufacturers Bank of Ellisville*, 218 Miss. 777, 67 So.2d 714 (1953). "This language, then, was sufficient to create a lien on the subject property for subsequently incurred debts by virtue of renewal or extensions of the secured debts listed on those deeds of trust. The language does not, however, appear to apply to any renewals or extensions of debt *not listed* in the particular deeds of trust. That is, the dragnet" clauses in the deeds of trust are sufficient to cover renewals and extensions of listed debt, but not to attach to unspecified future debt.

*Lampley v. United States*, 17 F.Supp.2d 609 at 616.

The facts in *Lampley v. United States* are somewhat distinguishable from the proceeding now before this court. The dragnet clause read as follows:

IN TRUST, NEVERTHELESS, (a) at all times when the note is held by the government . . . to secure prompt payment of the note *and any renewals or extensions thereof and any agreements contained therein* . . . (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein *or in any supplementary agreement.*

Judge Davidson concluded that the dragnet clause was sufficient to create a lien on the encumbered property for subsequently incurred debts resulting from renewals or extensions of those debts listed on the deeds of trust, but the dragnet clause did not apply to unspecified future debts. The dragnet clause in the deed of trust held by AmSouth in the instant proceeding is more expansive in that it con-

templates securing debts of any nature owed by the Sminks to the lender.

## IV.

 The issue of the efficacy of the future advance clause set forth in the deed of trust signed by the debtors is one of contract interpretation. As stated in *Shutze v. Credithrift of America* "[future advance] clauses are treated like any other provisions in a contract and will be enforced at law subject only to conventional contract defenses, e.g., fraud, duress, and the like ..." *Shutze v. Credithrift of America*, 607 So.2d 55, 59 (Miss.1992). The debtors have questioned the enforceability of the future advance clause relying on the *Merchants National Bank v. Stewart* opinion, which suggests that a future advance clause in a deed of trust may not secure a subsequent loan transaction between the parties if the subsequent debt is different in kind from the indebtedness secured by the original deed of trust. The pertinent passage from *Merchants National Bank v. Stewart* provides as follows:

> The nature of the secured debt has also been examined in determining the validity of dragnet clauses with respect to other debt. Some courts have held that unless the debt is of the same nature, or type as the secured debt, the language will not cover the other debt. (citations omitted) Moreover, the language "any and all other debts" that appears within the hypothecation agreement in dispute has been interpreted to include only debts similar to the primary debt secured by the document. *Wong v. Beneficial Sav. and Loan Ass'n*, 56 Cal. App.3d 286, 128 Cal.Rptr. 338, 342 (1976).

*Merchants National Bank v. Stewart*, 608 So.2d 1120, 1126 (Miss.1992).

Because the future advance clause presently under consideration contains the "any and all other debts" language referred to in the above quotation, the court read the above quoted passage closely and with great interest. The court also read *Wong v. Beneficial Sav. and Loan Ass'n* and found the following passage to be pertinent:

> The two *Moran* cases discussed ... illustrate a pair of considerations that have been dignified in other states into important determinants of whether a later loan by the same creditor will be protected by the original security. In *Moran v. Gardemeyer* (1889) 82 C. 96, 23 P. 6, where the debt was one bought up from a third party, the rationale there appears elsewhere in the form of a test concerning the relationship of the two loans to each other. If the first loan is made to enable the borrower to erect improvements on his real estate and the purpose of the second loan is only to finance more improvements on the same real estate, it is not hard to tie the two loans together under one deed of trust. But in a case such as Moran, there is so little connection between the loans that a court may easily find that the parties did not intend (either when executing the security instrument or when making the second loan) that the second loan should fall under the security. Thus Alabama has refused to let creditors sweep negligence or rent claims under their mortgages. (citations omitted) The rationale here is basically one of ejusdem generis: The phrase 'all other debts' means all other debts similar to the primary debt. (citations omitted)
>
> Under such a test, items like overdraws on a checking account ... are so different in nature that they should not be included within the security unless the parties specifically describe them. (citation omitted)

**166**

*Wong v. Beneficial Sav. and Loan Ass'n,* 56 Cal.App.3d 286, 295, 128 Cal.Rptr. 338, 343–344 (1976).

The future advance clause presently under review is two-fold in effect. For reference purposes, a version, *edited* to reveal its component parts, is set forth as follows:

This deed of trust secures not only the aforementioned indebtedness but also [1] such future and additional advances of any and all nature as may be made to the Grantors, or any of them, by the Beneficiary ... as well as, [2] any additional indebtedness of any and all nature of the Grantors, or any of them, heretofore, now, or hereafter contracted with or otherwise acquired by the Beneficiary before the cancellation of record of this instrument, whether such indebtedness be represented by promissory notes, open account, overdraft, or otherwise ...

■ The future advance clause at issue clearly states that it will secure any future and additional advances on the indebtedness secured by the deed of trust, *as well as, any other debts incurred by the grantors, or any of them, including those represented by, inter alia, subsequent promissory notes.* This particular future advance clause, albeit "boilerplate language," is clear and unambiguous. In Mississippi, the doctrine of ejusdem generis applies only when a contract is ambiguous. *Yazoo Properties v. Katz & Besthoff No. 284, Inc.,* 644 So.2d 429, 432 (Miss.1994); *Cole v. McDonald,* 236 Miss. 168, 109 So.2d 628, 637 (1959). Accordingly, the *Wong v. Beneficial Sav. and Loan Ass'n.* rationale, cited by the Mississippi Supreme Court in *Merchants National Bank v. Stewart,* does not apply to the contract language that is the focus of this proceeding.

■ As mentioned earlier in this opinion, the restatement of law on property provides that a future advance must be made in a transaction similar in character to the original mortgage transaction unless the mortgage describes with reasonable specificity the additional types of transactions which will be secured, or the parties specifically agree at the time of the subsequent transaction that the original mortgage will serve as security. Even though the restatement section, cited hereinabove, has been neither enacted statutorily by the Mississippi Legislature nor adopted in Mississippi case decisions, this court notes that the future advance clause at issue appears to provide an exception to the "similar in character" requirement because the clause describes "with reasonable specificity" the types of future advance transactions which will be secured. The court adds, however, that by far the better policy would be for the lender to specifically provide in the *subsequent* loan documentation that the parties agree that the later indebtedness is being secured also by the *original* mortgage which contains the future advance clause.

The court finds that the future advance clause contained in the deed of trust signed by the Sminks is clear and unambiguous and will be enforced as written. Succinctly stated, if this court concluded that the future advance clause was ineffective, it would, in effect, have to rewrite an unambiguous contract. Accordingly, the court finds that the deficiency which has arisen on the truck loan is secured by a lien on the debtors' homestead real property. An order will be entered accordingly.